GEORGE B. COGGINS On Behalf of Himself and Other Taxpayers of the City of Asheville v. CITY OF ASHEVILLE and RANGER CONSTRUCTION COMPANY

No. 14

(Filed 14 April 1971)

1. **Appeal and Error § 58— review of temporary or permanent restraining order — findings of fact**

   In cases involving a temporary restraining order, the trial court's findings of fact are not binding on the appellate court, which may make its own findings; when a permanent restraining order is involved, the trial court's findings of fact are binding on appeal if supported by the evidence.

2. **Rules of Civil Procedure § 52; Trial § 58— trial by court without jury — necessity for written findings and conclusions**

   In cases in which the trial court passes on the facts, the court must in writing (1) find the facts on all issues joined in the pleadings, (2) declare the conclusions of law arising on the facts found, and (3) enter judgment accordingly. G.S. 1A-1, Rule 52(a).

3. **Municipal Corporations § 39— bond issues approved for auditorium and arts center — use of bond proceeds for combined facility**

   Where municipal voters had approved separate bond issues for (1) erecting an auditorium and (2) constructing a civic arts center, and the city council thereafter determined that because of increased construction and land acquisition costs the proceeds from the bond issues would be insufficient to finance both projects separately, a contract entered into by the city council for construction of a new building, renovation of the existing auditorium and physical joinder of the two structures to form a combined facility to meet the basic purposes of both projects approved by the voters, *held* not to constitute an *ultra vires* act by the city council or an unlawful diversion of the bond proceeds in violation of G.S. 160-395 and Art. V, § 7, of the N. C. Constitution, since use of the funds for a combined facility is not a deviation from the general purposes for which the bonds were authorized.

   Justice HUSKINS dissents.

Coggins v. City of Asheville

APPEAL by plaintiff from *Ervin, J.,* August 31, 1970 Session, BUNCOMBE Superior Court. The case on appeal was docketed in the Court of Appeals and on petition of both parties, was certified to the Supreme Court for the original appellate review.

The plaintiff instituted this taxpayers' action against the City of Asheville and Ranger Construction Company to restrain the enforcement of a contract between the defendants entered into on May 27, 1970, by the terms of which Ranger Construction Company agreed to construct for the City a complex as authorized by two separate bond issues approved by the voters of the City. The plaintiff alleged the plans for the construction of the complex violated the intent and purpose for which two bond issues were authorized. The plaintiff demands that the execution of the contract be permanently restrained as violative of Article V, Section 7, Constitution of North Carolina and G.S. 160-395. The plaintiff filed a verified complaint to which were attached numerous exhibits and moved for a summary judgment declaring the contract void, restraining both the enforcement of the contract and the sale of any bonds (or the use of bond money) for the construction contemplated in the contract.

Attached to the complaint as exhibits were copies of Ordinances 1 and 3 passed by the City Council on October 19, 1967. The ordinances were approved by the voters at an election held December 5, 1967. Ordinance 1 provided for the issuance of bonds in the sum of $4,000,000 " . . . (F)or the purpose of providing funds, with any other available funds, for erecting an auditorium building, with facilities for public gatherings, exhibitions, amusements and athletic events, and incidental facilities, approaches, plazas, entrances, ways, streets, grounds and parking facilities, including the acquisition of necessary land, apparatus, fixtures and equipment."

Also attached, as Exhibit 3, was an ordinance of the City Council entered into and approved by the voters to contract a debt and issue bonds in the sum of $1,300,000 " . . . (F)or the purpose of providing funds, with any other available funds, for constructing a municipal civic arts center, including the erection of a theatre, amphitheatre, concert halls, art museum, museums of history and natural history, and incidental facilities, approaches, plazas, entrances, ways, streets, grounds and parking facilities, including the acquisition of necessary land, apparatus, fixtures and equipment."

At the time the bond resolutions were passed and the election held, and for thirty years prior thereto, the City of Asheville owned and operated the City Auditorium located on Haywood Street. The City Council employed an architect who drew plans for the proposed construction contemplated by Bond Resolutions 1 and 3. For the purposes contemplated, the City purchased additional lands adjacent to the lot on which the City Auditorium was located. This area was within one-quarter mile of Redevelopment Project NCR-13. On account of the City's contemplated improvements on Haywood Street, the City qualified for and received from the Redevelopment Project a gift of $1,500,000. If the contemplated projects authorized by the bond issues failed, the City would be obligated to refund the amount since it had no other development which could qualify for the gift.

Following the bond election, the City architects drew plans for the structures contemplated in Projects 1 and 3. However, they found that on account of the tremendous increase in construction and land acquisition costs between the election and the time to award contracts, the cost of the projects was far in excess of available funds.

An imposing list of organizations and civic leaders became interested in saving the projects, held meetings and came up with a plan to join the two projects contemplated in the bond resolutions by constructing a single complex using so much of the City Auditorium as fitted into the overall plan in such manner as to provide for the improvements authorized by both bond issues. The City Manager, the representatives of many civic organizations and interested citizens appeared before the City Council and recommended the construction of the complex as a single project.

On November 20, 1969, the Asheville City Council after thorough investigation and consultation with various organizations voted to merge the two projects (1 and 3) into one combined facility to be known as the Asheville Civic Center. Soon thereafter, architects were retained to draft plans for a Civic Arts Complex which would encompass the general purposes as set forth in both bond issues. Instead of constructing a new Civic Arts Center, a portion of the proposed plans called for the complete renovation and remodeling of the existing Asheville

Coggins v. City of Asheville

City Auditorium using only such parts of the old structure as fitted into and completed the new facility. Upon completion of the remodeling, plans then called for the physical joinder with the new Auditorium Center.

By providing a single joint facility, instead of two separate ones, the cost of maintenance and supervision would save the City $80,000 annually. The City Council approved the plans to merge the projects into the single complex and entered into the contract which the plaintiff now challenges.

The foregoing is a summary of the evidence before Judge Ervin. Both parties filed written motions for summary judgment. After full hearing, Judge Ervin made detailed findings of fact which cover eleven pages of the record. The findings recite: "Upon oral argument, Plaintiff, through his Counsel of record, admitted that there is no allegation or evidence of any bad faith, fraud, capricious or arbitrary action, or of any abuse of power or abuse of discretion on the part of the members of the City Council of the City of Asheville."

After full consideration of the evidence and the admissions, the court made findings of fact. These findings are supported by the evidence and upon the basis of the findings the court concluded:

"1. The erection and construction of the proposed 'arena' or 'new' building is within the general purposes of the Bond Issues or Questions presented to the voters of the City of Asheville on December 5, 1967, in Questions No. 1 and No. 3, and the contract respecting the same between the defendant City of Asheville and the defendant Ranger Construction Company is valid.

2. The physical connection between the proposed 'arena' or 'new' building and the existing auditorium in the fashion set out in the plans and specifications in the contract between Ranger Construction Company and the City of Asheville does not constitute a material or substantial change from the general purpose set forth in Questions No. 1 and No. 3 in the Bond Issues of December 5, 1967, and such plans and contract are valid.

3. The proposed renovation and remodeling of the existing auditorium, as set forth in the plans and specifications

forming a part of the contract between the City of Asheville and Ranger Construction Company, is not a material variation from the purposes set forth in the bond questions voted upon by the voters of Asheville on December 5, 1967, and, as a matter of law, the language set out in said Questions No. 1 and No. 3 does not, in view of the Facts presented to this Court, limit or confine the City Council of the City of Asheville to the erection and construction of a new structure, but can encompass and include the remodeling and renovation of the existing auditorium for the art related activities.

4. The contract between the City of Asheville and Ranger Construction Company, dated May 27, 1970, does not violate the provisions of G.S. 160-395 and the proposed expenditures by the City of Asheville, pursuant to that contract, do not constitute unlawful or *ultra vires* acts of the Asheville City Council.

5. The decision of the Asheville City Council of November 20, 1969, to merge the Civic Arts Complex and the Convention Center, and to utilize the existing auditorium, was based upon changed conditions which constituted sound and compelling reasons to modify the original plans and such modification, and utilization of the existing auditorium, was included, and remained within the general purposes for which the bonds were authorized.

6. The acts of the Asheville City Council in voting the merger of the two facilities on November 20, 1969, and in entering into the contract of May 27, 1970, did not constitute or amount to bad faith, fraud, capricious or arbitrary action, or abuse of power or abuse of discretion.

7. The City of Asheville has not diverted or misapplied any of the funds from either Bond Question No. 1 or No. 3, nor will the performance of its contract with the Ranger Construction Company constitute any such diversion or misapplication.

8. The combined complex set out in the plans and specifications in the contract between Ranger Construction Company and the City of Asheville will substantially provide the facilities and meet the general purpose of each of the respective Bond Questions.

---

Coggins v. City of Asheville

---

9. The contract between the City of Asheville and the Ranger Construction Company is not unlawful or *ultra vires* in any respect.

THEREFORE, based upon the Facts presented to this Court and the Conclusions of Law recited above, it is ordered, adjudged and decreed that the Motions for Summary Judgments filed by the City of Asheville and the Ranger Construction Company be and the same are hereby allowed, and the plaintiff's action against said defendants is dismissed.

It is further ordered that the plaintiff's Motion for Summary Judgment be and the same is hereby denied, and the costs of this action are taxed against the plaintiff in this cause.

This the 31st day of August, 1970.

/s/ SAM J. ERVIN, III
JUDGE PRESIDING"

The plaintiff excepted to the judgment entered and demanded appellate review.

*Bennett, Kelly & Long by E. Glenn Kelly for plaintiff-appellant.*

*City of Asheville by James N. Golding, Corporation Counsel.*

*Van Winkle, Buck, Wall, Starnes & Hyde by Herbert L. Hyde, Attorneys for Ranger Construction Co. for defendant appellees.*

HIGGINS, Justice.

In this action the plaintiff asked the court, (1) to restrain the defendants from performing their contract *inter se;* and (2) to restrain the City of Asheville from issuing bonds or using the bond proceeds to finance the contract. The evidentiary facts are not in dispute. However, only the ultimate facts found by the court and its conclusions of law based thereon are challenged.

[1] In cases involving a temporary rather than a permanent restraining order, the court's findings of fact are not binding on the appellate court which may make its own findings. McIntosh North Carolina Practice and Procedure, Vol. 2 § 2219;

*Board of Elders v. Jones,* 273 N.C. 174, 159 S.E. 2d 545, citing *Huskins v. Hospital,* 238 N.C. 357, 78 S.E. 2d 116. However, a different rule applies when the purpose of the action is a permanent restraining order. In the latter case, the trial court's findings of fact are binding on appeal, if supported by the evidence. *Whaley v. Taxi Company,* 252 N.C. 586, 114 S.E. 2d 254; *Smith v. Rockingham,* 268 N.C. 697, 151 S.E. 2d 568.

[2]    In cases in which the trial court passes on the facts, the court is required " 'to do three things in writing: (1) To find the facts on all issues of fact joined on the pleadings; (2) to declare the conclusions of law arising on the facts found; and (3) to enter judgment accordingly.' . . . Where facts are found by the court, if supported by competent evidence, such facts are as conclusive as the verdict of a jury." *Goldsboro v. R. R.,* 246 N.C. 101; 97 S.E. 2d 486. Rule 52(a) Findings: Chapter 1A-1, General Statutes of North Carolina, 1969 Replacement.

[3]    The plaintiff does not contravert the evidentiary facts. However, he does contend the contract and plans for the use of the bond proceeds constitute a material diversion from the purposes specified in the ordinances authorizing the bonds and violates G.S. 160-395. Specifically he argues the ordinances provide for new construction; and remodeling and the use of the old municipal auditorium are beyond the scope of the ordinances. G.S. 160-395 provides: "The proceeds of the sale of bonds under this subchapter shall be used only for the purposes specified in the ordinances authorizing said bonds . . . . "

The plaintiff, before Judge Ervin in the Superior Court, and on the review here, has insisted the contract between the defendants should be declared unlawful and its performance permanently restrained on the ground it contemplates the expenditure of bond money for purposes other than those authorized by the bond ordinances.

The plaintiff cites cases from a number of states which follow what is called the Strict Construction Rule. The rule is stated in the case of *Tukey v. City of Omaha,* 74 N.W. 613 (Neb. 1898) : "That, when the governing body of a municipality is authorized by a vote of the people, and only thereby, to incur a debt for a particular purpose, such purpose must be strictly complied with, and the terms of the authority granted be strictly and fully pursued . . . . " Cases following this Strict Construction

Rule are cited from Nebraska, New Mexico, North Dakota, Colorado, Oklahoma, Washington and West Virginia.

North Carolina and many other states follow a more liberal rule in construing statutory limitations upon the use of bond money for public improvements. Emphasis is placed on the final result sought to be accomplished. Bond ordinances are passed authorizing indebtedness for certain stated purposes. When an authorizing vote is required, the bond money is earmarked for the stated purposes. However, in planning large permanent improvements the governing authorities look ahead to the future fulfillment of the construction plans. The authorities will inspect and examine the work as it progresses and minor changes from time to time are expected if conditions change and unforeseen developments occur.

In this case the bond resolutions were passed at the election held in 1967. Thereafter, the City authorities undertook the task of acquiring suitable lands upon which to erect the structures and to negotiate a contract for the completion of the projects. They were successful in acquiring a tract of land on Haywood Street adjoining the lot on which the City's auditorium was located. After the issues were approved, but before the construction plans were completed, land acquired and a contract entered into, the City authorities discovered that due to a period of rapid inflation (estimated to be 1½% per month) the proceeds from the bond issues would fall far short of financing the project.

When the danger of losing the contemplated improvement became manifest, the Council sought the advice of architects, civic organizations and individual citizens as to what course could then be pursued and the purposes contemplated by Bond Issues Nos. 1 and 3 be accomplished. After extensive hearings the City Council concluded that by combining the two projects into one complex and by using the City's lot on Haywood Street and so much of the auditorium as fitted into the plans for the whole, the complex could be built in a manner to take care of and accomplish the objects contemplated in both Bond Resolutions 1 and 3. The plans for the complex contemplated the outlay of nearly $600,000 in rebuilding and reconstructing the old auditorium, using only a part of it which could be fitted into the project. By using the property the City already owned and the

grant of $1,500,000 from Redevelopment, the City was in a position to finance the project and to enter the contract with the co-defendant, the lowest bidder. This action challenges the validity of the contract and the right to sell the bonds on the ground the plans constitute an unlawful diversion from the projects authorized.

"A law authorizing a bond issue for various purposes which does not declare what proportion of the proceeds of the bonds shall be applied to each specific purpose is not void. Such matter may properly rest within the sound discretion of the municipal authorities." McQuillin-Municipal Corporations, Vol. 15, Section 43.68.

"It lies within the sound discretion of the legislative body of the City . . . to decide whether to proceed with one of the projects, even though there would be insufficient funds to proceed with the other project. . . . (T)he legislative body of the City . . . is not subject to the control of the courts in the absence of an abuse of discretion, fraud or collusion." *Krieg v. City of Springfield*, 106 N.E. 2d 652 (Ohio-1952).

"A definition of corporate purpose cannot be static. Changing conditions require that application of the limitations . . . be tempered with due recognition of the existing situation so the purpose for which the public body was organized may be accomplished and enjoyment thereof by the public made possible." *Michigan Boulevard Bldg. Co. v. Chicago Park District*, 412 Ill. 350, 106 N.E. 2d 359.

"Of necessity, the division of the proceeds of the sale of the bonds between sewerage and waterworks must be left to the discretion of the municipal authorities . . . . The exact cost of each could not be well determined by the Legislature." *Hotel Co. v. Red Springs*, 157 N.C. 137, 72 S.E. 837.

"It is true, the act does not declare what proportion of the proceeds of the bonds shall be applied to each specific purpose, but that is wisely left to the sound discretion of the city authorities . . . . " *Gastonia v. Bank*, 165 N.C. 507, 81 S.E. 755.

"While the law will not justify the use of the proceeds of a State or municipal bond issue for purposes other than those specified in the Act authorizing the issue . . . it does

---

---

not follow that immaterial or temporary changes consistent with the general purpose of the legislative act should be interpreted as unlawful diversions of public funds. *Atkins v. McAden,* 229 N.C. 752, 51 S.E. 2d 484; *Worley v. Johnson County,* 231 N.C. 592, 58 S.E. 2d 99." *Teer v. Jordan,* 232 N.C. 48, 59 S.E. 2d 359.

In *Waldrop v. Hodges,* 230 N.C. 370, 53 S.E. 2d 263, Barnhill, J., later C.J., stated the rules appropriate to the facts in this case: "While the defendants (Board of County Commissioners and School Trustees) have a limited authority, under certain conditions, to transfer or allocate funds from one project to another, *included within the general purpose for which bonds are authorized,* the transfer must be to a project included in the general purpose as stated in the bond resolution . . . . The funds may be diverted to the proposed purposes only in the event the defendant Board of Commissioners finds in good faith that conditions have so changed since the bonds were authorized that proceeds therefrom are no longer needed for the original purpose."

In the case of *Sykes v. Belk,* 278 N.C. 106, 179 S.E. 2d 439, with respect to the use of bond money, this court says: "The court will not interfere with the exercise of discretionary powers of a municipal corporation unless its actions are so unreasonable and arbitrary as to amount to an abuse of discretion. The parties stipulated in this case that the Council did not act arbitrarily or capriciously or in abuse of their discretion. It is worthy of note the cases on the subject emphasize *"deviation from the general purpose for which bonds are authorized"* and do not outlaw such changes as are necessary under existing conditions to accomplish the general purpose. For example, in this case the plaintiff contends the provision in the bond issues authorized the purchase of land but did not authorize the use of lands the City already owns. The use of property already owned by the City would be a saving and not a diversion. The Supreme Court of the United States in *Bain Peanut Co. v. Pinson,* 282 U.S. 499, 75 L. Ed. 482, 51 S.Ct. 228, gave us this admonition: "We must remember that the machinery of government would not work if it were not allowed a little play in its joints."

The record in this case is long, but neither tedious nor cumbersome. Counsel for all parties have ably prepared and presented this case both before Judge Ervin and this court.

Judge Ervin, with care and accuracy, determined the issues before him. We conclude the judgment which he entered in the Superior Court of Buncombe County is correct and should be and is now

Affirmed.

Justice HUSKINS dissents.