Robert E. BELL, et al. *v.* CRAWFORD COUNTY, et al.

85-36                                                    697 S.W.2d 910

Supreme Court of Arkansas
Opinion delivered October 28, 1985
[Rehearing denied December 9, 1985.*]

---

* Purtle and Hays, JJ., not participating.

252

*Gary R. Cottrell*, City Att'y for Van Buren; *Stephen G. Peer*, City Att'y for Alma; *Batchelor & Batchelor*, by: *Fines F. Batchelor, Jr.*; and *Gill, Skokos, Simpson, Buford & Graham, P.A.*, by: *John P. Gill*, for appellant.

*N.D. Edwards*, and *Shaw, Ledbetter, Hornberger, Cogbill & Arnold*, for appellee.

LOUIS B. JONES, JR., Special Justice. The court is being asked to construe provisions of the Arkansas Constitution, article 16, sections 9, 11 and 13, and amendments 13, 17 and 25 and thus jurisdiction arises under Rule 29 1. a.

Appellants are mayors of four municipalities in Crawford County (Van Buren, Alma, Mulberry, and Mountainburg) who

are bringing a class action suit in their capacities as individual taxpayers against the quorum court and various officials of the county. The mayors are representing interests of the municipal taxpayers who allege they are not receiving their fair share of money resulting from three different funds and awarded by the chancellor to the county to be used for purposes to benefit all county residents. Municipal residents constitute approximately one-half the county population, and property within corporate limits was taxed to raise about one-half of the ad valorem tax for the hospital. Therefore, appellants allege they should receive one-half the funds resulting from the bond surplus, lease fund, and interest.

Three funds are involved in this dispute: the bond surplus, the hospital lease fund, and the interest from the hospital lease fund. For 30 years, beginning in 1948, the county taxpayers paid an ad valorem tax to construct, equip, and expand a county hospital. The hospital was finished sooner than expected and an excess tax of $122,200 was collected, which all parties agree was an illegal exaction. The hospital was run on a non-profit basis until 1982 when the county leased it to Humana Medical Centers for 26 years. The first five years of the lease brought the county $2.5 million (lease fund); the remainder of the lease was to result in an additional revenue for the county of $18,775,000, according to the appellants. In addition to the rent, the lessee agreed to retire revenue bonds issued by the county in 1972 for improvements on the hospital which were to be paid from hospital revenues. The county put the $2.5 million lease fund on deposit, pending settlement of a government Hill-Burton repayment obligation. Interest from this fund (interest fund) goes into the county general fund and has been transferred to the county road fund.

The chancellor ruled that a refund to the taxpayers of the bond surplus was impossible due to the passage of time. Since the hospital was complete and managed by a for-profit corporation, there was no way the chancellor could apply the fund to a hospital-related activity. He therefore found the best way to return the illegal exaction was to return it to the county general fund for use by all the taxpayers. The chancellor further found the lease fund and interest thereon to be property of the county and, since he found no evidence of Crawford County officials acting intentionally to discriminate against any segment of the taxpay-

ers, he ruled the county had the proper authority to manage the money.

Appellants' first contention is that the use of the bond surplus and hospital lease fund (and the interest thereon) by the county is an illegal exaction; such funds are the property of the taxpayers and the county is a mere trustee. The hospital in question is or was the property of Crawford County having been financed by a local millage. Exclusive jurisdiction over such county owned hospitals rests with the county judge and quorum court. Ark. Const. art. 7, § 28; amendment 55, § 3; Ark. Stat. Ann. § 17-304 (Repl. 1980). These county officials, in conjunction with the County Hospital Board of Governors, have been given the right to sell or lease a county hospital. Ark. Stat. Ann. § 17-1504 (Repl. 1980).

This court has specifically ruled that the sale of a county hospital does not constitute an illegal exaction in violation of art. 16, § 13 of the Arkansas Constitution (1874). *Richerson* v. *Bearden*, 278 Ark. 350, 645 S.W.2d 946 (1983). Although *Richerson* involved the sale of a county hospital and the instant case involves the lease of a county hospital, there is no legal distinction between the transactions. Neither the lease of Crawford County Memorial Hospital nor the funds generated by the lease payments constitutes an illegal exaction. Therefore, we find that the trial court correctly determined that the hospital lease fund and the accrued interest thereon was not an illegal exaction. Our holding is dispositive of the other points raised in appellants' brief relative to the removal of the county as trustee of the funds. Since the use of the lease fund and interest is found not to be an illegal exaction, the county should be the disbursing agent for said funds.

As to the bond surplus fund, however, the chancellor determined that the bond surplus fund constituted an *illegal* exaction. None of the parties appealed from that ruling. The chancellor found that return to the taxpayers of the bond surplus was impossible due to the passage of time. We therefore must determine whether the chancellor ruled correctly that the illegal exaction, which all parties agree cannot be returned to the individual taxpayers who originally paid the tax, could only be returned to the county's general fund. We disagree with the

chancellor's assumption that the only remedy for the illegal exaction of the bond surplus was to give it to the county's general fund. A tax dedicated to one purpose cannot be used for another and accordingly, money appropriated from a hospital fund should not be used for county roads. In other cases involving illegal exactions, surpluses have been refunded to the taxpayers. *City of Searcy* v. *Headlee*, 222 Ark. 719, 262 S.W.2d 288 (1953); *City of Stuttgart* v. *McCuing*, 218 Ark. 34, 234 S.W.2d 209 (1950). *McCuing* is a case involving surplus funds from an appropriation to improve streets. The funds were illegally put in a Street Fund to repair and maintain existing streets. In *McCuing* this court said:

> Here, the surplus fund in excess of the money necessary to retire the bonds with interest and to complete the work for which collected is substantial. It belongs to the taxpayers who paid it and not to the City. We hold that the duty rested on the City to make refund of the surplus as prayed.
>
> From a practical viewpoint, since in all cases of refunds there must be necessary costs attached, such refunds would be subject to the burden of distribution. Obviously, in some instances where excess funds are to be dealt with, the overall cost of refunding might exceed the surplus, or it might be found that in respect of each taxpayer the rule *de minimis non curat lex* (the law cares not for small things) should apply. In such cases, where no taxpayer's claim could be regarded as substantial, no refunds would be required. In all other cases, however, as indicated, refunds should be made upon appropriate demand.

218 Ark. at 39.

■■ Appellees and appellants both argue that a refund to the taxpayers would be impossible or impractical. Nevertheless, a refund to the taxpayers of record in 1978, the year that the bonds were retired, should be made. The task would be admittedly difficult, but the amount involved, approximately $122,200, is not *de minimis*, and we have held that the taxpayers, in instances of bond surpluses accumulating as a result of the retirement of the original bond issue, are entitled to a refund. This court is of the opinion that there must be a more appropriate remedy here than

giving the bond surplus to the county's general fund. The case is therefore remanded to the chancellor on the question of the proper disposition of the bond surplus funds, with instructions to adduce proof to determine how best to effect a refund to the taxpayers of the surplus bond moneys. If the chancellor determines, after hearing testimony, that such a refund is impossible, the surplus funds should be used for health care, since that was the purpose for which the bonds were originally issued.

The chancellor's ruling is affirmed in part as set out herein and remanded in part for further findings not inconsistent with this opinion.

Affirmed in part; remanded in part.

PURTLE and HAYS, JJ., not participating.