Terry C. HARTWICK, et al. *v.* Mary THORNE, et al.
89-109                                                      780 S.W.2d 531
Supreme Court of Arkansas
Opinion delivered December 4, 1989
[Supplemental Opinion on Denial of Rehearing
January 16, 1990.*]

*Turner, J., not participating.

*Jim Hamilton*, City Att'y, by: *Francis D. Crumpler, Jr.*, Asst. City Att'y, for appellants.

*Mitchell and Roachell*, by: *Richard W. Roachell* and *David E. Simmons*, for appellees.

JOHN I. PURTLE, Justice. This is an appeal of a chancellor's ruling requiring the appellants to refund to the appellee taxpayers the principal and interest on a part of a bond issue proceeds which could no longer be spent for a designated project. The appellants argue that the court erred in finding the bond issue to be an illegal exaction and in requiring the accumulated interest on funds set aside from the bond issue to be refunded to the taxpayers. The trial court ruled correctly on each issue, and we therefore affirm.

On July 9, 1975, the North Little Rock City Council enacted Ordinance No. 4532 for the purpose of calling an election to issue $2,605,000 in Amendment 13 bonds. The ballot title for the proposed bond issue stated the following purpose:

> For an issue of bonds in the amount of $2,605,000 for the construction of street improvements (including various improvements, but including, without limitations, the construction of an underpass on Pershing Boulevard, and a drainage canal between Faulkner Lake and the Arkansas River and various curbing and guttering improvements).

Between the enactment of Ordinance No. 4532 on July 9, 1975, and the special election on the bond issue held on August 26, 1975, intense campaigning was conducted by the proponents and opponents of the bond issue. Those favoring the bond issue apparently feared that it would not pass without the support of the residents of the area in North Little Rock known as Rose City. The ordinance and ballot title specifically proposed a drainage canal between Faulkner Lake and the Arkansas River, although neither specified a particular sum for construction of the canal. The resulting drainage, proponents maintained, would afford the residents of Rose City much-needed relief from water overflow during heavy rain. The bond election encompassed other proposed projects not at issue in this appeal.

During the election campaign, the proponents paid for an advertisement in a newspaper supplement which stated that the Corp of Engineers had devised a plan to keep Faulkner Lake at an

even level: "This is done by constructing a drainage ditch from the Lake to the Arkansas River. The city share of the cost is $700,000." The bond issue was approved by voters on August 26, 1975.

On February 9, 1976, the North Little Rock City Council enacted Ordinance No. 4607, which authorized and directed the mayor and city clerk to establish a special bank account in the amount of $700,000, drawn from the bond issue, for eventual use as payment for the construction of the Faulkner Lake drainage project. The ordinance further provided that the interest earned on the deposit "shall remain in said account to offset any increased cost of construction due to inflation."

The Faulkner Lake drainage canal was never completed because the Corp of Engineers determined that it was not feasible. Meanwhile, the appropriated funds together with accumulated interest remained on deposit. On March 9, 1987, the North Little Rock City Council enacted Ordinance No. 6034, which stated that the canal project was not feasible and repealed the ordinance establishing the separate fund. On the same date, the city council also passed Resolution No. 3115, authorizing the mayor to enter into contract negotiations with an engineering firm to consider curbing and guttering improvements in Rose City. These improvements were to be paid for from the funds originally set aside by Ordinance No. 4607 for the construction of the Faulkner Lake drainage canal. The appellees filed suit to force the refund of these disputed funds rather than to allow them to be used for curbs and guttering. They alleged that such an expenditure would amount to an illegal exaction.

On January 25, 1989, the chancellor ruled that spending the bond issue proceeds that had been set aside for the canal project for the alternative purpose of street and drainage improvement constituted an illegal exaction. She ordered a refund to the taxpayers of the principal amount of $700,000 plus the accrued interest amounting to over $1,800,000. In her opinion, the chancellor stated:

> The proposed Drainage Canal was well publicized and it is not unreasonable to speculate that had the Drainage Canal project not been a part of the proposed use of the funds, the electorate might not have approved the Ordinance. This is

the exact evil that the constitutional provision is designed to guard against. If bond money is raised for purposes A, B, and C, it is unconstitutional for the money to be used *only* for purposes A and B. Those voting in favor of the bond issue solely or primarily because of the designated use provided for by purpose C are misled.

At the heart of the issue before us is a provision of the now-repealed Amendment 13 to the Arkansas Constitution (amending Article 16, Section 11), which was in effect at the time of the bond issue in question. Although Amendment 13 was repealed by Amendment 62 in 1984, it still governs the situation in the present case. Amendment 13 provided, in pertinent part:

> [N]o money raised under the provisions of this Amendment by taxation or by sale of bonds for a specific purpose shall ever be used for any other or different purpose. It shall be the duty of the mayor and the city council or other governing body established by law, to exercise supervision over the sale of any bonds, which may be voted on by the people at an election held for that purpose and they shall expend economically the funds so provided for the specified purposes for which they were voted.

In considering the restrictions of Amendment 13, we must decide the specific issue of whether the expenditure of funds for curbs and gutters from the sum set aside for the abandoned canal project is within the meaning or purpose for which the bonds were issued. We must consider not only Amendment 13 but also the requirement of Ark. Code Ann. § 14-58-203(b)(1) (1987) that: "Funds resulting from taxes levied under statutes or ordinances for specific purposes may not be diverted to another purpose."

An illegal exaction is an act that is not authorized or which is contrary to law. Neither fraud nor bad faith must be shown before a taxpayer may seek relief. *Mackey* v. *McDonald*, 255 Ark. 978, 504 S.W.2d 726 (1974). We have long held that Section 13 of Article 16 of the Arkansas Constitution is self-executing and requires no enabling act or supplemental legislation to make its provisions effective. In *Samples* v. *Grady*, 207 Ark. 724, 182 S.W.2d 875 (1944), this court held that Section 13 of Article 16 confers the right upon any citizen to institute suits in

his own behalf and that of all other interested citizens to protect against any illegal exaction. The *Samples* opinion went on to state that citizens are given the right as taxpayers to present misapplication of public funds by seeking an injunction in chancery.

In *Arkansas-Missouri Power Company* v. *City of Rector*, 214 Ark. 649, 217 S.W.2d 335 (1949), a very similar case, the city of Rector enacted an ordinance providing for an election to issue bonds in the amount of $65,000 for the purpose of building a power plant and distribution system. The sale of the bonds was approved, and the city appropriated the $65,000 to construct the plant and distribution system. It was announced after the election, however, that $65,000 would be insufficient to build the structures. The city officials acknowledged that they had known all along that $65,000 would prove inadequate, but, they insisted, with the added state and federal grants the system could be built. The taxpayers were unsuccessful in their efforts in chancery court to have the funds declared an illegal exaction. They argued that the election was invalid due to misleading advertising and misstatements made by bond proponents.

In reversing the chancery court in the *Rector* case and declaring the bond issue to be an illegal exaction, this court held that the voters, in determining how to vote, were entitled to look to the title of the ordinance, the preamble of the ordinance, the body of the ordinance or the proposition to be voted on as listed on the ballot, along with the notice of the election. The opinion specifically pointed out that discussions in city council meetings, street conversations, speeches at mass meetings, and such incidents are not what the courts look to in making a determination of the purpose for which bonds are issued. The *Rector* opinion stated:

> The ballot title is the final word of information and warning to which the electors had the right to look as to just what authority they were asked to confer, and we think its implication and ordinary meaning is that it was proposed to construct the plant with the proceeds of the bond sale.

The ordinary meaning attaching to the wording of the ballot title in this case clearly conveyed the message to the electorate that the city intended to use a part of the funds to construct a canal between Faulkner Lake and the Arkansas River. It is

evident that everyone concerned believed that some of the proceeds of the bond issue would be used on the canal project. However, the determination of unfeasibility and the accumulation of interest changed things. It is understandable that the city, and no doubt some taxpayers, desired to put this fund to a good use. That, however, is not the issue before us. We must decide whether it can be accomplished legally.

This court was called upon to make a decision concerning Article 16, Section 11 of the Arkansas Constitution in the case of *Mears* v. *Little Rock School Dist.*, 268 Ark. 30, 593 S.W.2d 42 (1980), where we held that the interest on tax monies raised on behalf of the school district belonged to the schools and not to the county. We cited with approval *Pomona City School Dist.* v. *Payne*, 9 Cal. App. 2d 510, 50 P.2d 822 (1935), which held that interest on school taxes was part of the principal and belonged to the schools in the absence of legislative action. The *Mears* opinion noted that *Miles* v. *Gordon*, 234 Ark. 523, 353 S.W.2d 157 (1962), had relied on the California case in reaching a decision that "Article 16, Section 12 of the Constitution, which prohibits taking money out of the state treasury without an appropriation, did not apply to interest on tax money when the two were separated by legislation." The *Miles* case involved an act of the legislature in using interest accrued on investments, a part of the revenue stabilization reserve fund, after it had been collected for another purpose. *Miles* went on to hold that interest on funds, unless lawfully separated therefrom, was a part of the principal. However, the interest collected in *Miles* was on funds which had been deposited into the general revenues of the state treasury.

In addition to *Miles*, the appellants have also relied on *Board of Education of Ouachita Co.* v. *Morgan*, 182 Ark. 1110, 34 S.W.2d 1063 (1931), and *Easterling* v. *Cook*, 175 Ark. 574, 299 S.W. 1009 (1927), for the proposition that accrued interest amounts on tax monies are not taxes and therefore are not required to be refunded as proceeds from an illegal exaction. The *Morgan* and *Easterling* cases have been implicitly overruled by *Mears* and *Miles* and are now explicitly overruled to the extent that they conflict with this opinion.

We considered another illegal exaction in *Special School Dist. No. 100* v. *Sebastian Co.*, 277 Ark. 326, 641 S.W.2d 702

(1982), applying the mandates of Article 16, section 11, of the Arkansas Constitution. The central issue again was whether taxes collected for one purpose may be used for any other purpose. We expressly held that the use of school funds for other than their intended purpose is specifically prohibited.

More recently, we held in *Bell* v. *Crawford Co.*, 287 Ark. 251, 697 S.W.2d 910 (1985), that "A tax dedicated to one purpose cannot be used for another and accordingly, money appropriated from a hospital fund should not be used for county roads." The *Bell* opinion was almost directly on point with respect to the present case when it stated: "[W]e have held that the taxpayers, in instances of bond surpluses accumulating as a result of the retirement of the original bond issue, are entitled to a refund." The opinion directed the trial court in the manner of handling refunds in instances where individual taxpayers could not be located.

There is no implication, nor was it argued, that the city of North Little Rock was acting in bad faith at any time during the proceedings upon which this appeal is based. The city may have been acting in the utmost good faith — nevertheless, it tried to appropriate monies arising from taxes for purposes other than the objective which caused the citizens to approve the bond issue. Although there may not have been a legal requirement that the city have appropriated $700,000 for the canal project, it seems to be a reasonable figure in view of the circumstances of this case. The advertising before the election used this figure, and the ordinance setting aside the fund was passed shortly after the election.

The appellant argues that Act 490 of 1989, enacted on March 10 of this year and codified at Ark. Code Ann. § 14-72-701 (Supp. 1989), is dispositive of the issue of interest accumulated on these funds. The statute may have been intended for this exact purpose, but it was not in existence at the time the chancery court rendered a final judgment in the matter, nor did it include language indicating retroactive application. Since Act 490 of 1989 was not presented to the trial court — indeed it could not have been presented — we do not consider it on appeal.

Affirmed.

Hays and Newbern, JJ., dissent.

David Newbern, Justice, dissenting. The general purpose of the bond issue stated in the ballot title was "street improvements," followed by some parenthetically stated specific projects including the ill-fated canal from Faulkner Lake to the Arkansas River. The issue presented is whether the city council can use the money raised by the bond issue for the general purpose stated in the ballot title when one of the specific purposes has been determined infeasible.

Although the court's opinion quotes the chancellor's statement that the voters were "misled" by the ballot title, the opinion makes it clear that there was no fraud. I find it objectionable that the opinion recognizes that rhetoric accompanying the proposal and the ballyhoo of the election is irrelevant and yet refers to an "advertisement" as a supporting fact. As the court's opinion states, quoting *Arkansas-Missouri Power Corporation v. City of Rector*, 214 Ark. 649, 217 S.W.2d 335 (1949), "[t]he ballot title is the final word."

This case is made especially difficult by the fact that the city segregated $700,000 for the canal project, and that money can be readily identified as that which by ordinance, and not by ballot title, the city intended to spend on the canal. Were it not for the fact that the money can be so readily identified, I suspect this court would not hesitate to follow the general law in this area which permits the city to use the money for a purpose stated in the ballot title. The precedent set here is unfortunate because the next time taxpayers perceive a particular project stated as part of a bond issue ballot title has not been accomplished, and no money has been set aside for it, this case will be cited and someone will have to decide whether the entire bond issue is invalid or, if it is not, just how much money should be returned to the taxpayers as being representative of the omitted project.

Amendment 13 provided that if more than one purpose was stated in the bond issue ordinance the voters be allowed to vote on them separately. In *Rhodes v. City of Stuttgart*, 192 Ark. 822, 95 S.W.2d 101 (1936), we held that "construction, straightening and paving . . . streets, alleys, and boulevards" was one purpose and that Amendment 13 did not require each item to be stated separately. Perhaps the bond issue in this case could have been

challenged as stating separate purposes if building the canal was so unrelated to street improvements as to constitute a separate purpose requiring a separate vote. It was not so challenged, and that is not the issue here.

In *Arkansas-Missouri Power Co.* v. *City of Rector, supra,* the ballot title informed the citizens that the $65,000 to be raised would be used to construct an electric power plant. It turned out that no power plant could be constructed for that amount, and the intent of the city authorities had been to combine the money raised with additional sources of revenue to construct a much more expensive plant. We held there had been an illegal exaction because "the cost of the proposed public improvement as stated in ballots used in a special election in reference thereto is a limitation upon subsequent official acts based upon a favorable vote." 214 Ark. at 656, 217 S.W.2d at 338. The testimony recited showed that the voters had been intentionally misled because city officials had not even attempted to establish the actual cost of the power plant prior to bringing the bond issue to a vote.

This case does not present a situation analogous to that in the *Arkansas-Missouri Power Corp.* case. Here there was no evidence of intentional misleading. If there were, it would be incumbent on us to declare the entire bond issue invalid rather than some part of it which, but for the fortuity of the ordinance segregating the canal money, would be undefined.

There is no Arkansas case exactly on point. Perhaps the closest I have found from other jurisdictions is *Coggins* v. *City of Asheville*, 278 N.C. 428, 180 S.E.2d 149 (1971). The city sponsored two bond issues. One was for construction of a new auditorium, and the other was for construction of a new arts center. By the time the election had been held and the plans made, costs had risen to the extent that both projects could not be done with the money raised. The city council decided to use the money to make one project instead of two by renovation of its old auditorium building into an arts center and adding a new auditorium to be connected to the old building. A taxpayer complained, and the Supreme Court of North Carolina held that the change was permissible because it was done to accomplish the general purpose of the two bond issues.

The North Carolina court quoted language from a leading

treatise on municipal corporations which now appears at 15 E. McQuillen, *Municipal Corporations*, 43.68 (3rd Ed. 1985):

> A law authorizing a bond issue for various purposes which does not declare what proportion of the proceeds of the bonds shall be applied to each specific purpose is not void. Such matter may properly rest within the sound discretion of the municipal authorities.

The court then quoted from a number of decisions from other jurisdictions as well as from earlier North Carolina cases. I need not repeat all of them here, but a typical quotation is:

> "It lies within the sound discretion of the legislative body of the City *** to decide whether to proceed with one of the projects, even though there would be insufficient funds to proceed with the other project. *** [T]he legislative body of the city *** is not subject to the control of the courts in the absence of an abuse of discretion, fraud, or collusion." *Krieg* v. *City of Springfield*, 92 Ohio App. 436, 106 N.E.2d 652 (1952).

I find nothing at all wrong with using the $700,000 plus the accumulated interest for street improvements in the Rose City area which would presumably have benefitted from the canal. Such a holding would not mean that a city government could hoodwink voters by intentionally promising that which it had no intention of delivering. Again, that is not an issue in this case, and I fear the precedent we will set by returning the bond money to the taxpayers instead of allowing it to be used for a purpose stated in the ballot title will haunt us. While the disappointment of those who hoped for the construction of the canal is understandable, I conclude that the city's proposed use of the bond money for one of the purposes stated in the ballot title does not constitute an illegal exaction.

I respectfully dissent.

HAYS, J., joins in this dissent.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
JANUARY 16, 1990

*Jim Hamilton*, City Attorney, by: *Francis D. Crumpler, Jr.*, for appellants.

*Mitchell and Roachell*, by: *Richard W. Roachell*, for appellees.

ROBERT H. DUDLEY, Justice. We deny the petition for rehearing, but write to supplement the original opinion on one issue.

The original opinion states that we do not consider a statute passed during the pendency of an appeal. That statement is in error. In fact, we have recently considered two (2) acts passed after the trial court ruled. *Treiber* v. *Hess*, 301 Ark. 97, 782 S.W.2d 43 (1990); *Nathaniel* v. *Forrest City School Dist. No. 7*, 300 Ark. 513, 780 S.W.2d 539 (1989). We have long done so. *Van Hook* v. *McNeil Monument Co.*, 107 Ark. 292, 155 S.W. 110 (1913). However, "the legislature cannot, by enactment of a retrospective statute, exercise a power in its nature clearly judicial." *Federal Express Corp.* v. *Skelton*, 265 Ark. 187, 196, 578 S.W.2d 1 (1979). It is prohibited from doing so by the separation of powers doctrine. *Federal Express Corp.* v. *Skelton*,

*supra.* Thus, even if we construed the act in this case to be retroactive, we would not allow it to retroactively annul a court decision.

Rehearing denied.