The Honorable John Lowery State Representative 200 North Jefferson Avenue, Suite 620 El Dorado, Arkansas 71730-5856
Dear Representative Lowery:
I am writing in response to your request for an opinion on several questions arising from the following reported facts:
 In April 2007 the voters of El Dorado approved a one cent general purpose sales tax. The eight year tax is for the purpose of improving the City from clean-up, street improvements, infrastructure improvements and a conference center. The City Council adopted a resolution outlining those areas where the tax money would be spent. In order for funding of the various projects to move forward on a timely basis, the City needs to borrow $11 million dollars under Amendment 78 to fund the construction of the conference center.
Against this backdrop, you have posed the following two questions:
 1. Can the City spend these sales tax dollars to pay interest on the loan?
 2. Can these sales tax dollars be spent any way the City is allowed to spend public funds?
RESPONSE
A definitive answer to these questions requires factual determinations that are outside the scope of an opinion from this office. You have described the tax as a *Page 2 
"general purpose sales tax." This suggests that the voters did not approve any designated use[s] of the revenues derived from the tax. If in fact that is the case, then the answer to both of your questions is clearly "yes," in my opinion. I believe it is clear that the City can spend so-called "undesignated" sales tax dollars to pay interest on debt incurred pursuant to Amendment 78 to the Arkansas Constitution. Indeed, as explained below, I believe such revenues are pledged as a matter of constitutional law to secure the Amendment 78 debt. Your statements regarding the "purpose" of this sales tax suggest, however, that the tax may have been levied at least in part to fund specific improvements. If so, then spending the sales tax revenues to pay interest on the Amendment 78 loan is constitutionally suspect, in my opinion, if the voters did not approve any debt in connection with such improvements. I should note, however, that we do not yet have the benefit of Arkansas case law interpreting the short-term financing section of Amendment 78, or its implementing legislation — the "Local Government Short-Term Financing Obligations Act of 2001," A.C.A. § 14-78-101 to-110 (Supp. 2007). A conclusive determination is difficult in the absence of any helpful judicial precedent.
Question 1 — Can the City spend these sales tax dollars to payinterest on the loan?
Cities and counties are generally prohibited from issuing any interest-bearing evidences of indebtedness. Ark. Const. art. 16, § 1.[1] This prohibition is qualified by several constitutional amendments, including Amendment 78, which is implicated by your question.[2] The relevant section of Amendment 78 (Section 2), provides in pertinent part as follows: *Page 3 
 (a) For the purpose of acquiring, constructing, installing or renting real property or tangible personal property having an expected useful life of more than one (1) year, municipalities and counties may incur short-term financing obligations maturing over a period of, or having a term, not to exceed five (5) years. . .
 * * * The aggregate principal amount of short-term financing obligations incurred by a municipality or a county pursuant to this section shall not exceed five percent (5%) of the assessed value of taxable property located within the municipality or two and one half percent (2.5%) of the assessed value of taxable property located within the county, as determined by the last tax assessment completed before the last obligation was incurred by the city or county. The total annual principal and interest payments in each fiscal year on all outstanding obligations of a municipality or a county pursuant to this section shall be charged against and paid from the general revenues for such fiscal year, which may include road fund revenues. Tax revenues earmarked for solid waste disposal purposes may be used to pay printing and other costs associated with bonds issued under this amendment for solid waste disposal purposes.
 (b) As used here:
 (1) "Short-term financing obligation" means a debt, a note, an installment purchase agreement, a lease, a lease-purchase contract, or any other similar agreement, whether secured or unsecured; provided, that the obligation shall mature over a period of, or have a term, not to exceed five (5) years. . . .
(Emphasis added). See also A.C.A. § 14-78-101 to -110 (Supp. 2007) (the "Local Government Short-Term Financing Obligations Act of 2001"). *Page 4 
The City of El Dorado is therefore authorized, pursuant to Amendment 78 and its implementing legislation, to incur the indebtedness contemplated by your question, assuming all the restrictions and requirements of this constitutional amendment are observed. With regard to the specific question of interest payments on such indebtedness, reference must be made to the language emphasized above: "The total annual principal and interest payments in each fiscal year on all outstanding obligations of a municipality or a county pursuant to this section shall be charged against and paid from the general revenues forsuch fiscal year, which may include road fund revenues." (Emphasis added). Amendment 78 therefore mandates that principal and interest owed in any given year on a loan issued pursuant to the amendment will be paid with that year's "general revenues." As explained in the following excerpt from an opinion issued by my immediate predecessor, this in effect requires the municipality to pledge its general credit:
 In my opinion, Amendment 78 clearly authorizes a municipality to secure a 5-year note for such improvements with a pledge of its general credit. Indeed, I believe subsection 2(a)(2) of the amendment, in mandating that principal and interest owed in any given year be paid with that year's general revenue, is in effect requiring that the municipality pledge its credit as a condition of issuing the instrument. See also A.C.A. § 14-78-103(d)(1). Amendment 78 is unequivocal in declaring that "all outstanding obligation" incurred pursuant to its terms — a category that would include all obligations that matured during the current fiscal year must be paid from the current fiscal year's revenues.
Op. Att'y Gen. 2003-152 at 5.
With regard to the use of sales tax revenues to satisfy Amendment 78 obligations, I believe it is clear that proceeds from a so-called "general purpose" or "undesignated" sales tax will be included among the "general revenues" pledged to those obligations. Although you have not identified the statute under which the City proceeded in calling for an election on the particular sales tax at issue in your question, I note that you have described the tax as a "one cent general purpose sales tax." This suggests that it may have been levied under either A.C.A. § 26-75-201 et seq. or 26-75-301 et seq., both of which contain authority for expending sales tax revenues for general city purposes. A.C.A. § 26-75-217(a) (Supp. 2007) *Page 5 
(authorizing use of sales tax funds "for any purpose for which the city's general funds may be used."); A.C.A. § 26-75-301(c)(2) (Supp. 2007) (providing that sales tax collections "may be used to secure the payment of bonds or for any purpose for which the municipality's general fund may be used. . . ."). See also Oldner v. Villines, 328 Ark. 296,305, 943 S.W.2d 574 (1997) ("When a tax is enacted by the General Assembly or approved by a vote of the people without the statement of a purpose, the resulting revenues may be used for general purposes."). If the tax was in fact levied for general purposes, then in my opinion Amendment 78 plainly contemplates the City using such undesignated sales tax revenues to pay interest on debt incurred pursuant to the amendment. Indeed, the act of issuing the Amendment 78 obligations will probably necessarily have that effect.[3]
I believe a separate analysis is called for, however, if the sales tax at issue was instead designated for particular uses at the election on the levy of the tax. The subchapters recited above — A.C.A. §§ 26-75-201et seq. and 26-75-301 et seq. — specifically authorize the levy of a sales tax for particular purposes. A.C.A. §§ 26-75-208(c)(1)(A) and26-75-308(d)(1)(A) (Supp. 2007) ("The ballot may also indicate designated uses" of the sales tax revenues). If the tax is approved, the proceeds are limited to those designated purposes. Id. at -208(c)(1)(B) and -308(d)(1)(B).[4] Your statements regarding the sales tax in question suggest that it may have been levied at least in part to fund certain improvements. As explained in response to your second question, I lack the resources and the authority to determine what, if any, particular uses were authorized by the voters. However, if the tax was in fact a so-called "designated" sales tax, then using the proceeds to pay interest on an Amendment 78 loan will be constitutionally suspect, in my opinion, if the voters did not approve any debt when they approved the tax.
Article 16, Section 11 of the Arkansas Constitution provides: "No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; and no moneys arisingfrom a tax levied for one *Page 6 purpose shall be used for any other purpose." (Emphasis added). Consistent with this constitutional imperative, the Arkansas Supreme Court has embraced the principle that where the legislature has authorized the voters to approve the imposition of a tax, "the voters' right to be fully informed of the matter for which they are casting their votes is paramount." Daniel v. Jones, 332 Ark. 489, 502,966 S.W.2d 226 (1998). The court in Daniel observed:
 In Oldner, we stated that the express intent of that constitutional provision `is for the object to be stated so that the tax revenues cannot be shifted to a use different from that authorized.' 328 Ark. at 305, 943 S.W.2d at 579. It is the use of the funds for a different purpose that constitutes an illegal exaction. Id. (citing Hartwick v. Thorne, 300 Ark. 502, 780 S.W.2d 531
(1989); Bell v. Crawford County, 287 Ark. 251, 697 S.W.2d 910, cert. denied, 475 U.S. 1120
(1985)).
Id. at 499.
A so-called "ballot title argument" will therefore lie if a tax designated for a particular purpose is diverted to another purpose.Western Foods, Inc. v. Weiss, 338 Ark. 140, 150, 992 S.W.2d 100 (1999). With regard to the sales tax at issue in your question, it might appear at first glance that using the tax to pay interest on the Amendment 78 loan will satisfy the imperative under Ark. Const. art. 16, § 11, as long as the improvements funded by the loan are included among the tax's designated uses. In other words, the tax seemingly will not have been diverted from its intended purpose(s) if the tax and the loan are intended to fund the same improvement(s). Upon further review, however I believe it becomes apparent that this fails to recognize the important fact that the voters, in approving the sales tax, did not approve using the revenues to service debt. Instead, they approved using the revenues directly for the improvements. In my opinion, this may be a critical distinction in a ballot title challenge. The voters could have approved financing the improvements through sales tax-backed capital improvement bonds. See Ark. Const. amend. 62 and A.C.A. § 14-164-301 et seq. But if they did not approve any debt in connection with the sales tax, then I believe it may be immaterial that the revenues are being used to effect the voter-approved improvements. Using the tax to pay interest on a loan issued under Amendment 78 will in my opinion probably offend art. 16, § 11, if that use was not fully disclosed to the voters. Cf.Daniel, supra, 332 Ark. at 502 (holding that when the levying ordinance and ballot *Page 7 
recited only five county uses for sales tax proceeds, art. 16, § 11 prohibited distributing the proceeds pro rata among the county and municipalities because "the voters' right to full disclosure as to how the tax revenues would be spent outweighs any consideration of the General Assembly's authority to establish the particular scheme of distribution of those revenues.")
In opining to this effect, I recognize that Ark. Const. amend. 78
plainly permits the City to finance public improvements without voter approval. As explained above, however, Amendment 78 authorizes, and indeed appears to require, the pledge of the City's generalrevenues to discharge the financing agreement. It does not stand as affirmative authority to securitize the debt with a specially designated tax. I have previously so opined. Op. Att'y Gen. 2007-182 at n. 1 ("[R]evenues that are in the nature of special revenues arguably are not included as a source of financing debt incurred pursuant to Amendment 78.")[5] Additionally, as to the question of whether the City might,in its discretion, use proceeds from a designated sales tax to pay interest on the Amendment 78 loan (as distinguished from securitizing the loan with the tax), it is my opinion for the reasons explained above that Ark. Const. art. 16, § 11 will likely prevent such use if the voters were not put on notice that the tax would be used to carry a loan.
Question 2 — Can these sales tax dollars be spent any way the City isallowed to spend public funds?
This question requires determining the intent of the local officials involved and the intent of the local electorate, matters that I am not well positioned to address. Without access to the factual circumstances regarding what the voters may have *Page 8 
intended in approving the ballot measure, I am unable to determine what uses were authorized. I can and will, however, set forth the general legal standards that a court might apply in determining the voters' intent. Local counsel and, perhaps, a local court are properly situated to apply these standards based upon a review of all the pertinent facts.
Generally, absent some ambiguity in the texts of the levying ordinance or the ballot title, the express terms of one or both of those texts will control in determining the permissible uses of the tax revenues. Op. Att'y Gen. Nos. 2007-216; 2006-199; 2005-278. The question implicates Ark. Const. art. 16, § 11, which provides in pertinent part that "no moneys arising from a tax levied for one purpose shall be used for any other purpose." See also Hartwick v. Thorne, 300 Ark. 502, 506,708 S.W.2d 531 (1989). In determining the purpose of a tax, the Arkansas Supreme Court has stated: "[I]t is to the title of the ordinance and the ballot title `that the electors had the right to look to ascertain what they were asked to approve[.]'" Daniel v. Jones, 332 Ark. 489, 501,966 S.W.2d 226 (1998), quoting Arkansas-Missouri Power Corp. v. City ofRector, 214 Ark. 649, 654, 217 S.W.2d 335, 337 (1949). Although the court declared in Daniel that `"[t]he ballot title is the final word of information and warning to which the electors had the right to look as to just what authority they were asked to confer,'" 332 Ark. at 501
(quoting Arkansas-Missouri Power, supra), the court further declared inMaas v. City of Mountain Home, 338 Ark. 202, 208, 992 S.W.2d 105 (1999): "The ballot is the `final word' to the voters only in the sense that it is the last source of information, not in the sense that it is conclusive of the measure' effects. It must be read in conjunction with the levying ordinance." The court has also observed: "When a tax is enacted by the General Assembly or approved by a vote of the people without the statement of a purpose, the resulting revenues may be used for general purposes." Oldner v. Villines, 328 Ark. 296, 305,943 S.W.2d 574.
In the event of an ambiguity, a finder of fact might look to extrinsic evidence of the voters' intent in approving the levy. See Arkansas StateHighway Commission v. Mabry, 229 Ark. 261, 315 S.W.2d 900 (1958);Mears v. Arkansas State Hospital, 265 Ark. 844, 581 S.W.2d 339 (1979); Op. Att'y Gen. Nos. 2004-121; 97-260. A court might look at such factors as evidence of the historical context of the measure, contemporaneous conditions at the time of its enactment, consequences of interpretation, and other matters of common knowledge within the limits of its jurisdiction in order to determine whether the voters intended to approve use of the sales tax revenues for the particular projects in question. Id. *Page 9 
In my opinion, therefore, the answer to your question regarding the use of the particular sales tax at issue will depend upon the language of the ordinance by which it was levied and the ballot title by which it was presented to the electorate. I note that you have made reference to a resolution that reportedly outlined the areas where the tax revenues would be spent. As explained by my immediate predecessor, however: "A resolution is no more than a statement of opinion by the quorum court and is in no sense a binding pronouncement of policy." Op. Att'y Gen.2006-103 (citing A.C.A. § 14-14-904). Section 14-14-904 defines a "county resolution" as follows:
 A county resolution is defined as the adoption of a formal statement of policy by a quorum court, the subject matter of which would not properly constitute an ordinance. A resolution may be used whenever the quorum court wishes merely to express an opinion as to some matter of county affairs, and a resolution shall not serve to compel any executive action.
A.C.A. § 14-14-904(j) (Supp. 2007).
By contrast, a "county ordinance" is defined as follows:
 A county ordinance is defined as an enactment of compulsory law for a quorum court that defines and establishes the permanent or temporary organization and system of principles of a county government for the control and conduct of county affairs.
Id. at (i).
After citing the above definition of "resolution," my predecessor concluded:
 In my opinion, the document you have attached to your request does not qualify as a "levying ordinance" setting forth dedicated uses for tax proceeds realized following approval of the tax by the voters. The document is expressly identified in its caption as a "resolution" a measure that the Code expressly declares serves "merely to express an opinion as to some matter of county affairs." . . . [A.C.A. § 14-14-904] further provides that "a resolution shall not serve to compel any *Page 10 
executive action." Id. In accordance with this definition, Resolution No. 60-82 merely "recommends" a particular distribution of tax proceeds upon voter approval. I have not been informed whether either the levying ordinance or the ballot specified particular uses of tax proceeds and hence am unable to opine on how Maas [v. City of Mountain Home, 338 Ark. 202, 208, 992 S.W.2d 105 (1999)] might bear on these documents.
Op. 2006-103 at 5.
I agree in all respects with this analysis. Generally, therefore, the recommendations contained in a county resolution do not qualify as a levying ordinance. It is clear from the cases cited above that the levying ordinance, together with the ballot title, will ordinarily control in determining the permissible uses of the tax revenues.
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General
[1] Article 16, Section 1 of the constitution provides:
 Neither the State nor any city, county, town or other municipality in this State shall ever lend its credit for any purpose whatever; nor shall any county, city or town or municipality ever issue any interest bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the indebtedness existing at the time of the adoption of the Constitution of 1874, and the State shall never issue any interest-bearing treasury warrants or scrip.
(Emphasis added).
[2] Amendment 78 authorizes a municipality or county to incur interest-bearing short-term debt without a vote of the people. Ark. Const. amend. 78, § 2. Additionally, Amendment 62 to the Arkansas Constitution generally authorizes cities and counties to issue tax-backed bonds after a vote of the people. Ark. Const. amend. 62, §§ 1 2. Finally, Amendment 65 authorizes the issuance of "revenue bonds" without an election of local voters, as long as they are backed or secured by revenues other than taxes. Ark. Const. amend. 65, § 3.
[3] Of course, pursuant to the express terms of Amendment 78 itself, any such evidence of indebtedness must be limited to five years. It plainly would be impermissible to use sales tax revenues to discharge interest on Amendment 78 notes beyond five years.
[4] Another statute — A.C.A. § 26-73-113 (Repl. 1997) — authorizes a sales and use tax to, inter alia, "[a]cquire or construct capital improvements of a public nature for no more than twenty-four (24) months[.]" Id. at (a)(2)(C). Because you have referred to the particular sales tax in question as an "eight year tax," this statute is presumably inapplicable.
[5] I followed up this statement in the previous opinion by observing that Amendment 78 debt "must be paid from `general revenues.'"Id. To the extent this suggests that Amendment 78 itself prohibits using the revenues from a designated tax to defray costs associated with Amendment 78 debt, I should clarify that I am not certain the amendment has that effect. We do not yet have the benefit of case law interpreting Amendment 78's requirement that "total annual principal and interest payments in each fiscal year . . . shall be charged against and paid from the general revenues for such fiscal year. . . ." Ark. Const. amend. 78, § 2(a)(2). Read literally, this language admittedly suggests a limitation on a municipality's authority to use any revenues other than "general revenues" to pay the costs associated with Amendment 78 obligations. However, if a reviewing court were to consider the amendment's history, and specifically the historical constitutional limitation on municipal debt, see Brown v. City of Stuttgart, 312 Ark. 97,847 S.W.2d 710 (1993), I believe it might be persuaded that Amendment 78 is primarily concerned with a municipality's ability to pledge its credit. This may leave open the City's possible use of a voter-approved designated sales tax as a source of payment in connection with an obligation incurred under Amendment 78. In my opinion, however, a question may remain concerning whether such use accords with the voters' intent. *Page 1