CITY OF JACKSONVILLE, ARKANSAS, et al. *v.*
Donald VENHAUS, County Judge, Pulaski County,
Arkansas

89-154                                      788 S.W.2d 478

Supreme Court of Arkansas
Opinion delivered April 30, 1990

*Vaughan and Bamburg*, by: *Keith Vaughan*, for appellants City of Jacksonville, Arkansas and Lula M. Leonard, Treasurer.

*Jim Hamilton*, Office of North Little Rock City Attorney, and *Mark Stodola*, Office of Little Rock City Attorney, by: *Thomas M. Carpenter*, Assistant City Attorney, City of Little Rock, for appellants City of Little Rock, Arkansas and City of North Little Rock, Arkansas.

*Jack, Lyon & Jones, P.A.*, by: *Eugene G. Sayre*, for appellant class of taxpayers.

*Larry D. Vaught*, Pulaski County Attorney, by: *Nelwyn Davis*, Assistant County Attorney, for appellees Pulaski County, Arkansas and County Judge and County Treasurer.

*Jim Hamilton*, Office of North Little Rock City Attorney, and *Mark Stodola*, Office of Little Rock City Attorney, by: *Thomas M. Carpenter*, Assistant City Attorney, City of Little Rock, for appellants City of Little Rock, Arkansas and City of North Little Rock, Arkansas, on an issue raised by James A. Ragan.

*Jack, Lyon & Jones, P.A.*, by: *Eugene G. Sayre*, for representative taxpayers as appellees on certain issues.

DAVID M. GLOVER, Special Justice. This is the third appeal arising in this illegal exaction action commenced eight years ago. The primary question before us is the proper disposition of undistributed funds collected by taxing authorities and placed in a common fund in accordance with our earlier decisions. The first two appeals were *Ragan* v. *Venhaus*, 289 Ark. 266, 711 S.W.2d

467 (1986) and *City of Little Rock* v. *Ragan*, 297 Ark. 525, 763 S.W.2d 87 (1989).

In the first appeal we found that the collection of the designated use tax constituted an illegal exaction. Upon remand, the chancellor appointed co-trustees to oversee the refund of the collected use tax funds. On November 29, 1988, the court entered an order approving a refund plan and setting a hearing on December 15, 1988, for the purpose of receiving proposals or recommendations from the parties and other interested entities regarding the disposition of the nonrefundable residue of the common fund created.

At or after the hearing, the court received written requests from twenty-four charitable or public organizations requesting direct grants of portions of the residue of the common fund or supporting the establishment of a permanent Pulaski County Foundation or the construction of a juvenile detention and services center.

On December 20, 1988, the Cities of Little Rock and North Little Rock filed a joint motion requesting that the chancellor recuse. Thereafter, on December 29, 1988, the chancellor denied the municipalities' motion for recusal and entered an order making specific findings of fact and conclusions of law in which she directed $700,000.00 of the residue of the common fund be distributed in specific amounts to forty-two separate charities or funds, with the balance of the residual funds to be used by the co-trustees to construct a juvenile detention and services center in Pulaski County.

This appeal is based on four points of error contained in the chancellor's two separate orders on December 29, 1988.

We find the chancellor committed error in both orders. We reverse and remand, in part, with instructions.

1. Recusal

Counsel for the City of Little Rock asked the chancellor during the hearing on December 15, 1988, if she had, prior to the hearing, held any discussions with any of the parties or any of the intended beneficiaries, other than the co-trustees, concerning the distribution of any residual funds. The chancellor replied that

people had called and she had directed them to the co-trustees to submit proposals.

During the hearing, the chancellor further noted that she had previously served on the board of directors of one of the groups that was requesting a donation from the residual funds; she advised another spokesman that his arguments "didn't fall on deaf ears"; and she commented that juvenile justice had been very dear to her and to her late husband.

After the hearing a motion to recuse was filed December 20, 1988. The order denying the motion was signed on December 22, 1988, without a hearing, and was filed on December 29, 1988.

In *Westbrook* v. *State*, 265 Ark. 736, 742, 580 S.W.2d 702, 705 (1979), we held that it was error not to hold a hearing on a motion for recusal and stated, "[a]lthough the burden was upon the appellant to show cause for disqualification of the presiding judge, he could hardly do so without the opportunity to be heard on his motion." Due to the chancellor's failure to hold a hearing on recusal or, in the alternative, her failure to recuse, we must reverse.

Arkansas Code of Judicial Conduct, Commentary to Canon 2 (1988), provides that "[a] judge must avoid all impropriety and appearance of impropriety." Accordingly, "[a] judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned . . . ." Arkansas Code of Judicial Conduct, Canon 3(C)(1) (1988).

Where a judge exhibits bias or the appearance of bias, this court will reverse. *Patterson* v. *R.T.*, 301 Ark. 400, 784 S.W.2d 777 (1990); *Farley* v. *Jester*, 257 Ark. 686, 520 S.W.2d 200 (1975). "The proper administration of the law requires not only that judges refrain from actual bias, but also that they avoid all appearances of unfairness." *Bolden* v. *State*, 262 Ark. 718, 561 S.W.2d 281 (1978).

As we review the record, the following documentary evidence was received at and after the December 15, 1988, hearing:

1. Juvenile Master Vicki Sandage's November 21, 1988, letter to the Human & General Services Department that includes the following language: "I am aware of

possible funding sources that might be available immediately for a detention facility . . . . I am asking you to write me expressing your professional assessment of such needs. I would like to have your input to help me communicate those needs as the opportunities become available.";

2. The December 14, 1988, letter to Juvenile Master Vicki Sandage from the State Department of Human & General Services that endorses a juvenile justice center and starts: "With reference to your letter of November 21, 1988. . . .";

3. The personal letter to the chancellor on behalf of Serenity House stating, "I'll bet you thought running "unopposed" was the ultimate in popularity "Well, you ain't seen nothing yet.";

4. A note reminding the chancellor of her service on the United Way Board of Directors; and

5. The letter the chancellor received in support of a juvenile justice center from the National Conference of Christians and Jews with knowledge the chancellor was sitting on the Board of Directors of this organization at the time the petition was made.

At least nine of the organizations that received funds, including two that did not make application, were United Way organizations. Woodlawn Therapeutic Children's Center received $25,000, and the chancellor had served on that Board of Directors at one time.

■ Given the chancellor's identification with some of the recipient organizations, coupled with her comments during the hearing and our observations from the record, we find the chancellor's funding choices and findings in her December 29, 1988, order exhibited the appearance of bias. As a result, she should have recused.

## 2. Residual Fund Disposition

Appellant class-members urged the chancellor to apply the *cy pres* doctrine, thereby fashioning a "fluid recovery" remedy using the residual funds to benefit all citizens of Pulaski County. In the alternative, they suggested distribution of the residual

funds either to a formal fund to be known as the Pulaski County Foundation or to a number of small charities existing within Pulaski County.

They are joined on appeal by the cross-appellant municipalities in urging a vacation of the portion of the chancellor's order that gave the bulk of the residual funds to the construction of a juvenile detention and services center.

The municipalities contend that the residual funds should be returned pro rata to the respective governmental entities and used for the purpose for which the tax was collected, which was to provide general municipal services to the citizens.

We agree with the approach of the municipalities.

We have stated that monies collected for one purpose cannot be spent for another purpose. *Bell* v. *Crawford County*, 287 Ark. 251, 697 S.W.2d 910 (1985).

Pursuant to *Bell*, the chancellor must first, by evidentiary hearing, identify all taxpayers from whom monies were illegally exacted who can feasibly be identified, and second, the chancellor must utilize the unclaimed residual funds for the purpose for which they were collected.

The chancellor clearly did not follow the dictates of *Bell*. Instead, she ordered $700,000.00 of taxpayers' funds be given to assorted charities. She made awards to forty-two charities in varying amounts. Nine charities received funding without having submitted applications. On the other hand, at least four charities that submitted applications were not funded. In addition a $5,000.00 award went to establish a fund to host an annual Christmas party for the children of Pulaski County employees.

The Arkansas Constitution forbids county or municipal funds to be given to any corporation, association, institution, or individual. Ark. Const. art. 12 § 5; *Halbert* v. *Helena-West Helena Ind. Dev. Corp.*, 226 Ark. 620, 625, 291 S.W.2d 802, 806 (1956). The record reveals, however, that fifteen or more corporations were awarded $355,000.00 in the distribution order.

An estimated 3.3 million dollars has been entrusted by the chancellor's order to the co-trustees to be used in their discretion

for the construction of a juvenile justice center.

The distribution order states, in part:

> The Court agrees that to allow a proportionate refund to the Defendant governmental entities in the case would reward those governmental entities for their past *misdeeds*, . . ." [Emphasis added.]

The awarding of the 3.3 million dollar sum to defendant/appellant Pulaski County contradicts the chancellor's statement. We also think that the chancellor's use of the word "misdeeds" in her order mistakenly implies flagrant actions by the parties which are not supported by the record.

Such use of public funds is arbitrary and capricious, necessarily leads to unpredictable results, and is impermissible.

On remand, subject to other instructions included herein, we direct that the residual funds be returned pro rata to the governmental entities to be used for general municipal services.

### 3. Judgment Interest Disposition

Further, on remand, subject to other instructions included herein, judgment interest paid should be returned pro rata to the governmental entities to be used for general municipal services, excluding Pulaski County, which was not a plaintiff entitled to pre-judgment interest and was precluded by Ark. Code Ann. § 16-65-114 (1987) from paying any post-judgment interest.

### 4. Vehicle Use Tax

It is unclear why the chancellor's order entered on October 28, 1986, which compelled the Arkansas Commissioner of Revenues to release the names and addresses of individuals, corporations, or partnerships of the appellant taxpayers class that paid use tax and the amount of the tax paid, was not enforced. The sum of $285,045.01 was reported to have been received through vehicle use tax collections by the Commissioner of Revenues. By using a maximum of $25.00 of use tax per vehicle, this total of collections during the defined period represents at least 11,400 separate claimants who would be entitled to refunds of the use tax collected upon registration in Pulaski County of their out-of-state

purchased vehicles.

ARCP Rule 23(d) requires that adequate notice be given to each class-member.

Appellant taxpayers' class contends that the records available in the Motor Vehicle Section of the Revenue Division, Department of Finance and Administration, State of Arkansas, are "taxpayer-specific" as to the name, address, and amount of use taxes collected from the individual members of the appellant class-members. Unlike the records obtained through discovery, vehicle use tax records are not computer generated and must be manually searched.

The question then becomes whether these persons and entities are entitled to written notice of the right to claim a refund and the amount of the refund as was given those persons found through computer generated records for consumer use tax report filings and vendor use tax report filings.

Our reasoning in *Bell v. Crawford County, supra*, requires us to remand this portion of the case to the chancellor now sitting in the division from which this case arose to conduct an evidentiary hearing on the adequacy of notice given under ARCP Rule 23(d) as it applies to motor vehicle use taxpayers in Pulaski County in the affected period.

Reversed and remanded, in part, with instructions.

Special Justice J.W. GREEN, JR., joins in this opinion.

HAYS, J., concurs.

DUDLEY, NEWBERN, GLAZE and PRICE, JJ., not participating.

STEELE HAYS, Justice, concurring. Because I believe the chancellor erred in failing to return the residual funds and interest to the taxing authorities on a pro rata basis, I concur. I see no need to reach the recusal issue.