The Honorable Lindsley Smith State Representative 340 North Rollston Avenue Fayetteville, AR 72701-4178
Dear Representative Smith:
I am writing in response to your request for an opinion "on whether the City of Fayetteville taxpayers' `contribution' of $1.5 million to the Walton Arts Center Foundation, Inc. made in the late 80's to help fund an initial $3 million endowment fund must be invested pursuant to the normal statutory restrictions on municipal funds." You have asked specifically:
Can the $1.5 million contribution from the City be invested pursuant to state law governing non-profit corporations (and the determination of the Walton Arts Center Foundation, Inc.'s Board) without further statutory restrictions that would control investments of municipal revenues?
RESPONSE
In my opinion, the answer to this question is "no." That is, the funds contributed by the City of Fayetteville ("City") to the Walton Arts Center Foundation, Inc. ("Foundation") in my opinion must be invested pursuant to the laws governing the investment of municipal funds.
I should note as an initial matter that it is somewhat unclear from the Foundation's corporate documents whether the Foundation was given authority, ostensibly, to invest the City's contribution outside of the usual restrictions applicable to municipal funds. The Foundation's articles of incorporation were amended in 1993 to, inter alia, state as follows regarding the Foundation's purposes and activities:
Investment of funds received from the University of Arkansas and the City of Fayetteville shall be made in accordance with the investment policies of the University of Arkansas and the City of Fayetteville. Funds received from the Walton Arts Center Council, Inc., individuals, corporations and others may be invested in a reasonable, prudent and sound financial matter based upon a policy of this Corporation to be followed in future investment activity. This Corporation may employ an investment advisor to invest the assets of the Corporation in accordance with the investment policies of the City, the University and/or the Corporation.
Third Amendment to the Articles of Incorporation of the University of Arkansas/City of Fayetteville Arts Foundation, Inc. (Oct. 19, 1993), at 2.
It is somewhat unclear from this language whether the parties intend for funds received from the City to be subject only to the investment policies of the City. As explained below, however, regardless of the parties' intent, state law in my opinion requires that funds contributed by the City to the Foundation be invested as municipal funds.
Although you have not identified the source of the funds in question, other than referring to a "taxpayers' contribution," I assume the monies were contributed from the City's general fund. The Arkansas Supreme Court, in a case involving a tax exemption claim, noted the following stipulated facts regarding the Walton Arts Center:
The City and University entered into an Interlocal Cooperation Agreement in 1986 to finance, construct, and manage a center for the arts. Under the agreement, each contributed $4,500,000 for construction and an endowment to operate and maintain the facility.[1] The primary source of the funds for the University's contribution was a private donation from Sam and Helen Walton of Bentonville. The City's contribution consisted of $1,000,000 from its general fund and $3,500,000 from a sales tax capital improvement bond issue backed by the City's portion of county sales tax revenues. The bond issue was approved by Fayetteville voters in October 1986.
City of Fayetteville v. Phillips, 306 Ark. 87, 89, 811 S.W.2d 308
(1991) (emphasis added).[2]
The funding source for the City's $1.5 million contribution to the endowment fund, see n. 1, supra, is not entirely clear from this recitation. Nor have I been provided any specific information respecting the contribution's source, beyond what can be gleaned from your reference to a "taxpayers' contribution." For purposes of this opinion, however, I will assume that the funds in question were contributed from the City's general fund. I note in this regard that the City in my opinion would have lacked authority to establish an endowment fund with either the bond proceeds or the sales tax pledged to the bonds. Cf. Neal v. City of Morrilton, 192 Ark. 450, 92 S.W.2d 208 (1936) (holding that an ordinance purporting to provide for the expenditure of bond proceeds for maintenance as well as construction of a hospital was void as exceeding the power delegated under Ark. Const. amend. 13) and Op. Att'y Gen. Nos. 2005-224 and 95-033 (noting that the Local Government Bond Act of 1985, A.C.A. §§ 14-164-301 through-340, authorizes financing "capital improvements" through the issuance of bonds funded by a local sales and use tax, see A.C.A. § 14-164-333 and-337, but opining that "capital improvements" does not include maintenance or operations.)
The question, therefore, is whether funds contributed to the Foundation from the City's general fund must be invested pursuant to the relatively limited investment authority applicable to municipal funds. As several of my predecessors have noted regarding such authority, A.C.A. § 19-8-104 (Repl. 1998) sets forth the general rule that, with certain limited exceptions, public funds must be deposited in banks located in the State of Arkansas. Op. Att'y Gen. Nos. 2002-309 and 89-310. Section 19-8-101 of the Arkansas Code (Supp. 2007) defines the term "public funds" as meaning "any and all kinds of funds handled by treasurers, collectors, commissioners, sheriffs, and clerks." My predecessor in Opinion 89-310 further noted that cities may generally invest in United States bonds, see A.C.A. § 19-1-504,[3] various types of local and state bonds, and in-state certificates of deposit. In Opinion 89-310, my predecessor correctly noted that with the exception of certain retirement funds, the Code does not authorize the investment of public funds in mutual funds. Since the issuance of these opinions, the General Assembly has enacted A.C.A. § 19-8-111 (Supp. 2007), authorizing the investment of public funds in certificates of deposit insured by the FDIC. As noted in Opinion 2002-309, the Local Government Joint Investment Trust Act, A.C.A. § 19-8-301 — 310 (Repl. 1998), enacted in 1993, authorizes any ten or more local governments to create a trust for joint investment of their assets in certain specified types of investment vehicles. See A.C.A. §§ 19-8-304 and-308.
In my opinion, this statutory investment authority with respect to municipal funds applies to the funds that were contributed by the City to capitalize the Walton Arts Center endowment fund. As indicated above, the endowment was established pursuant to an Interlocal Cooperation Agreement entered under A.C.A. § 25-19-101 et seq. between the University of Arkansas and the City of Fayetteville for the construction of an arts center. Pursuant to the agreement, two corporations were formed under the Arkansas Non-Profit Corporation Act, A.C.A. § 4-28-201
et seq. — the Foundation and the "Arts Center Council" (subsequently named the "Walton Arts Center Council," see Third Amendment to the Articles of Incorporation of the University of Arkansas/City of Fayetteville Arts Center Council, Inc.). See Interlocal Cooperation Agreement, supra at n. 1. The Agreement called for the Arts Center Council to "serve as agent for the University and the City to construct, manage, operate and maintain a Center for the Arts." Id. The Foundation was created "to establish an endowment and pay over a portion or all of the income to the Arts Center Council for the operation, management, and maintenance of the Center for the Arts." Id. The City and the University each agreed to contribute $1.5 million to capitalize the endowment fund. Id.[4] In my opinion, the investment restrictions applicable to funds in the City's possession or control, see A.C.A. § 19-1-504, supra at n. 3, and funds handled by the city treasurer, see A.C.A. § 19-8-101, supra, apply to the contributed funds in the endowment because an entity created by Interlocal Agreement can exercise only those powers that the political subdivisions or state agencies creating it could exercise. Subsection 25-20-104 states in relevant part:
Any governmental powers, privileges, or authority exercised or capable of exercise by a public agency of this state alone may be exercised and enjoyed jointly with any other public agency of this state which has the same powers, privileges, or authority under the law. . . .
A.C.A. § 25-20-104(a) (Repl. 2002).
Additionally, A.C.A. 25-20-104(e) (Repl. 2002) provides:
No agreement made pursuant to this chapter shall relieve any public agency of any obligation or responsibility imposed upon it by law except that, to the extent of actual and timely performance thereof by a joint board or other legal or administrative entity created by an agreement made hereunder, performance may be offered in satisfaction of the obligation or responsibility.
As stated by one of my predecessors, "[t]his section . . . requires an entity created pursuant to an interlocal agreement to comply with "obligations imposed by law" . . . if the public agencies involved would, in the same situation, have to comply." See Op. Att'y Gen. 89-079
(regarding application of competitive bidding requirements to the Arts Center Council, now "Walton Arts Center Council," when it contracts for services and materials in connection with the Arts Center, now "Walton Arts Center.") To the extent, therefore, that the City would be constrained in its investment authority with respect to the funds that it contributed to the Foundation, I believe it is clear that the Foundation is also so constrained. The funds in my opinion do not lose their character as "public funds" for investment purposes. The Interlocal Cooperation Act clearly is not a vehicle for creating a separate entity to manage a city-funded endowment unrestrained by the usual investment limitations. Nor am I aware of any separate authority for such action. I note that the Uniform Management of Institutional Funds Act (UMIFA), A.C.A. §§ 28-69-601 — 611 (Repl. 2004), may well give the Foundation broad powers of investment with respect to the endowment fund as an "institutional fund," id. at-605 and 607. But in my opinion such investment authority does not extend to funds contributed from the City's general fund. As one of my colleagues had occasion to note, "[t]he provisions of the UMIFA clearly contemplate that the governing board of the institution will have direct authority to make investments." Ohio Op. Att'y Gen. 94-073. In my opinion, the Foundation lacks authority, other than as an agent of the City, to hold and invest the funds contributed by the City.
In conclusion, therefore, funds that were contributed by the City of Fayetteville to the Walton Arts Center Foundation, Inc. in my opinion must be invested pursuant to the laws governing the investment of municipal funds.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General
[1] The 1986 Interlocal Cooperation Agreement called for an initial endowment of $3 million, to be financed by equal contributions of $1.5 million from the City of Fayetteville and the University of Arkansas. Interlocal Cooperation Agreement (Dec. 9, 1986). The Walton Arts Center Foundation, Inc., originally named the "Arts Foundation, Inc.," id., was created to "maintain an endowment and pay over a portion or all of the income to the Walton Arts Center Council, Inc., for the operation, management, and maintenance of the Walton Arts Center." Second Amendment to Interlocal Cooperation Agreement Dated December 9, 1989 (Oct. 19, 1993), at 3.
[2] The initial Interlocal Cooperation Agreement referred simply to a "Center for the Arts." The Center was subsequently named the "Walton Arts Center." See Second Amendment to Interlocal Cooperation Agreement Dated December 9, 1989 (Oct. 19, 1993) and Third Amendment to the Articles of Incorporation of the University of Arkansas/City of Fayetteville Arts Foundation, Inc. (Oct. 19, 1993).
[3] Subsection 19-1-504(a)(1)(B) provides in relevant part:All of the following may convert funds in their possession or under their control and not presently needed for other purposes into bonds of the United States of America: * * * (ii) With the approval of the governing body, cities of the first class, cities of the second class, and incorporated towns, and the treasurers and collectors of cities of the first class, cities of the second class, and incorporated towns[.] A.C.A. § 19-1-504
(Supp. 2007).
[4] I must note, regarding the City's contribution, that this may give rise to a question of the applicability of Article, 12, Section 5 of the Arkansas Constitution, which states:No county, city, town or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual. Although it appears from case law that there are certain exceptions to this apparently blanket proscription, see Op. Att'y Gen. Nos. 2005-258
and 99-408, contributions to private nonprofit corporations are not among those exceptions, regardless of whether the corporation serves a public purpose. Id. See also Op. Att'y Gen. 92-250 (opining that a city's donation to a private fund or foundation for the benefit of a university would in all likelihood be constitutionally suspect under Ark. Const. art. 12, § 5). In Opinion 99-408, my predecessor summarized the state of the law in this regard as follows:[A]ny use of county moneys for charitable purposes may well pass constitutional muster if the use serves a public purpose or achieves a governmental function, so long as the recipient can be characterized as "public". . . . As the law currently stands, there appears to be some element of fiat in the Supreme Court's pronouncements regarding what pledges of municipal or county funds will be permitted. As established in McCutchen [v. Huckabee, 328 Ark. 202, 943 S.W.2d 225 (1997)], it is clearly permissible, for instance, to contribute to a facilities board, which, despite not being a straightforward municipal agency, has a statutory pedigree and has been identified as a category of entity beyond the contemplation of article 12, § 5. In the wake of [City of Jacksonville v.] Venhaus [302 Ark. 204, 788 S.W.2d 478 (1990)], however, it is clearly impermissible to contribute to a private nonprofit corporation like the AIDC. Perhaps the most that can be said is that if an entity is authorized by statute and is not organized as a private nonprofit corporation, and especially if the donations themselves are authorized by statute, a donation of county or municipal funds may be constitutional. These principles reflect a clear move by the Court to reassert that public moneys may only be put to public use. Emphasis added.As reflected by this excerpt, Ark. Const. art. 12, § 5's applicability likely turns upon the precise status of the particular recipient of public funds. In this regard, I note that a scenario of the precise nature involved in your question, involving a contribution by a city to a non-profit entity created by the city as a "body politic and corporate," see Certificate of Incorporation of "The University of Arkansas/City of Fayetteville Arts Foundation, Inc.," has not been squarely addressed by the court. Ordinarily, organization as a non-profit corporation would be a factor weighing against the permissibility of a city's contribution to such a corporation, under the authority of Venhaus, supra. See also Op. Att'y Gen. 2005-258 (observing that "501(c)(3) status" is "a characterization that is consistent only with an entity's organization as a private, nonprofit corporation.") I believe it is also of note that while the Arts Center Council, Inc., was designated by the Interlocal Cooperation Agreement "to serve as agent for the University and the City . . ." (emphasis added), the Foundation was not so designated. Declaring the Foundation to be a "body politic" under the Certificate of Incorporation suggests an intent to accord it some public status; but I question whether this alone warrants excluding the Foundation from art. 12, § 5, given the absence of any specific statutory authorization for an entity of this nature. Compare McCutchen, supra; A.C.A. § 4-35-101 (Supp. 2007) (authorizing conversion of a nonprofit corporation involved in water distribution to the status of a "public body politic and governmental entity . . ."); Op. Att'y Gen.2000-035 (drainage district deemed comparable to a facilities board, which the court in McCutchen, 382 Ark. at 213, described as "not the type of company, association, or corporation contemplated by Article 12, Section 5.") Based on the above, I am of the opinion that the City's contribution to the Foundation may be constitutionally suspect under Ark. Const. art. 12, § 5. I recognize, however, that there may be other factors to consider in determining whether the Foundation meets the principles enunciated by the court so as to fall outside the constitutional proscription. I lack authority to definitively resolve the matter.