The Honorable Willard Proctor Jr., Circuit Judge Sixth Judicial District, Fifth Division Pulaski County Courthouse 401 West Markham Little Rock, Arkansas 72201
Dear Judge Proctor:
I am writing in response to your request for an opinion on two questions, one regarding the collection of fees in circuit court and the other concerning A.C.A. § 14-14-1202, which addresses ethics in county government. Your two questions are as follows:
 1. When a Circuit Judge orders a probationer to participate in a program under A.C.A. § 5-4-303(c)(5) as a condition of his probation, is the Circuit Clerk of that County allowed to collect the fee that the Circuit Judge is allowed to impose for participation in that program under A.C.A. § 16-13-709 when the Circuit Clerk has been designated by the Quorum Court of that County to collect fines assessed by the Circuit Courts of that County?
 2. I am also requesting an opinion regarding A.C.A. § 14-14-1202:
 Cycle Breakers, Inc. receives funds from Pulaski County. Cycle Breakers, Inc. desires to compensate county employees for work as group leaders, transporting inmates, security, counseling and other activities designed to rehabilitate defendants. It also seeks to reimburse county employees for continuing education and training that may be *Page 2 
required to carry out certain functions. It is my understanding that this is permissible as long as the Quorum Court finds unusual circumstances that would justify such an expenditure pursuant to A.C.A. § 14-14-1202(c)(2)(A)(i). I have enclosed a copy of an Ordinance that will be introduced that would allow for such compensation and reimbursement. My question is, would there be a violation of A.C.A. § 14-14-1202 if the Quorum Court adopts the ordinance and then Cycle Breakers, Inc. compensates or reimburses the county employees and provides the County Judge with a payment voucher which details the date, amount and purpose of the compensation or reimbursement so that the County Judge would be able to file an affidavit affirming that the compensation or reimbursement was in line with the ordinance?
RESPONSE
In my opinion the answer to your first question is "no." The fees authorized at A.C.A. § 5-4-303(c)(5) are not "fines" as defined in A.C.A. § 16-13-701(b) (Supp. 2007), such that a circuit clerk would be authorized to collect them under A.C.A. § 16-13-709. In addition, I have found no other statute authorizing such collection and will note that constitutional objections could arise from such action under Arkansas Constitution, art. 12, § 5. In response to your second question, in my opinion the process you have outlined is not entirely consistent with A.C.A. § 14-14-1202 and may also implicate the provisions of A.C.A § 21-8-801. Section 14-14-1202(c)(2)(A)(i) does not, in my opinion, authorize a "blanket" ordinance sanctioning compensation to be paid to unspecified county employees by an entity which has a contract with the county, subject to later verification by the county judge. In my opinion, subsection (c)(2)(a)(i) contemplates the quorum court authorizing contracts or transactions between particular officers/employees and the county, or in this case, between county employees and the county's contractor (Cycle Breakers, Inc.). The information you have presented does not appear to reflect any type of contractual arrangement between the individual county employees and Cycle Breakers, Inc. In this regard, it is unclear from the facts presented whether the county employees in question would be performing the services as a part of the duties of their public positions, or in a private capacity, through a separate agreement or contract with Cycle Breakers, Inc. If the duties are performed in their capacity as public employees, this calls into question the *Page 3 
applicability of A.C.A. § 21-8-801 (Repl. 2004), which prohibits a public servant from receiving compensation, other than the income and benefits from the governmental body to which he is assigned, for the performance of the duties and responsibilities of his office or position. This statute is under the jurisdiction of the Arkansas Ethics Commission. I suggest that any questions in this regard be submitted to that entity. Finally, the quorum court may make an exception to the A.C.A. § 14-14-1202 prohibition only in the event of "unusual circumstances." The ordinance must "specifically define the unusual circumstances" under which the purchases are allowed and the limitations of such authority. It is not clear from the facts presented, including the draft ordinance, what "unusual circumstances" justify the ordinance.
Question 1 — When a Circuit Judge orders a probationer to participatein a program under A.C.A. § 5-4-303(c)(5) as a condition of hisprobation, is the Circuit Clerk of that County allowed to collect thefee that the Circuit Judge is allowed to impose for participation inthat program under A.C.A. § 16-13-709 when the Circuit Clerk has beendesignated by the Quorum Court of that County to collect fines assessedby the Circuit Courts of that County?
In my opinion the answer to this question is "no."
Section 5-4-303 addresses the conditions a court may attach when suspending imposition of sentence or placing a defendant on probation. In relevant part, it provides that:
 (c) If the court suspends imposition of sentence on a defendant or places him or her on probation, as a condition of its order the court may require that the defendant:
 * * * (5) Participate in a community-based rehabilitative program or work-release program that meets the minimum state standards for certification and for which the court may impose a reasonable fee or assessment on the defendant to be used in support of the community-based rehabilitative program or work-release program;
(Emphasis added). *Page 4 
The statute above does not address the process for collection of the fee, or whether the fee is payable to a public officer, or directly to the community-based program. It simply states that the fee may be imposed by the court and is "to be used in support of the community-based rehabilitative program . . ." Your question is whether the circuit clerk may collect the fee, if the circuit clerk has been designated by the county under a separate statute (A.C.A. § 16-13-709
(Supp. 2007)), as the official authorized to collect "fines" in the circuit courts. This latter statute provides in pertinent part that:
 (a)(1)(A)(i) The quorum court of each county of the state shall designate a county official, agency, or department, which shall be primarily responsible for the collection of fines assessed in the circuit courts of this state.
 (ii) All fines collected each month in circuit court by the designated county official, agency, or department shall be disbursed by the fifth working day of the following month to the appropriate county fund, state entity, or state agency as provided by law; the county administration of justice fund; and the State Administration of Justice Fund.
(Emphasis added).
"Fines" are defined for purposes of the subchapter as "all monetary penalties imposed by the courts of this state, which include fines, court costs, restitution, probation fees, and public service work supervisory fees." A.C.A. § 16-13-701(b) (Supp. 2007). I cannot conclude that this fairly detailed definition includes fees imposed for support of community-based rehabilitative programs, where such fees are not enumerated in the definition. In addition, subsection (a)(1)(A)(ii) contemplates disbursal only to the listed public entities and funds, and does not appear to provide any mechanism for disbursing funds to private nonprofit providers. I thus cannot conclude that the circuit court clerk's designation under A.C.A. § 16-13-709 authorizes him to collect the fees in question.
The remaining question is whether the circuit clerk is authorized by any other law to collect the fees, or whether he is in fact prohibited from doing so. I have not *Page 5 
found any precise statute or precedent governing the question.[1] It appears, however, from a review of the applicable statutory language and surrounding legislation, that A.C.A. § 5-4-303(c)(5) contemplates the fee being collected directly by the community-based rehabilitative program and not by public officers.
Again, the language of A.C.A. § 5-4-303(c)(5) does not directly address the issue, stating only that the fee is "to be used in support of the community-based rehabilitative program. . . ." I have not found any other statutes dictating the collection methods or disbursement procedures for the described fees. In determining the intention of A.C.A. § 5-4-303(c)(5) in this regard, however, it may be helpful to look at legislation governing the process for other such programs. One such statute governs similar type programs in district and city courts. In this regard, A.C.A. § 16-17-127 (Supp. 2007) provides in pertinent part as follows:
 (e) A district court or city court may require a defendant to pay reasonable fees, in an amount to be established by the court, relating to private contractors providing probation services, pretrial supervised release programs, or alternate sentencing programs authorized by law.
 (f)(1) Notwithstanding § 16-13-701 et seq., a private contractor may collect and retain only the fees established by the court for services provided pursuant to subsection (a) of this section.
(Emphasis added).
This statute clearly envisions the private contractor directly collecting the fee authorized by the court. It also provides a number of other safeguards to ensure the accountability of the private contractor, including the posting of a surety bond and the reporting to the political subdivision of all fees collected. Similarly, the alcohol education or treatment programs required in connection with "driving while intoxicated" offenses contemplate the applicable fees being paid directly to the *Page 6 
state's contracted provider, with the fees then remitted to the Office of Alcohol and Drug Abuse Prevention, presumably for ultimate disbursement under the contract. See A.C.A. § 5-65-115 (Supp. 2007).See also, A.C.A. § 5-65-307 (Supp. 2007) and Op. Att'y Gen 2006-031. It thus appears that similar programs provide for direct collection of the fee by the private service provider. In the absence of any controlling statute on the question, and in determining the legislative intent of A.C.A. § 5-4-303(c)(5) in this regard, it appears reasonable to construe it in a similar fashion.
This conclusion is bolstered by the provisions of Arkansas Constitution, art. 12, § 5, which prohibits a county from "obtaining or appropriating money for" private corporations. To the extent your question envisions the circuit clerk collecting fees on behalf of a private non-profit corporation, a question may arise as to whether the county would be unconstitutionally aiding the corporation under this provision. See Investigative Report, Legislative Joint Auditing Committee "Review of Selected Activity, Cycle Breakers Inc." (August 1, 2007) at 8, available at www.legaudit.state.ar.us (raising questions as to the constitutionality of court personnel collecting fees on behalf of Cycle Breakers, Inc.).
In my opinion, therefore, the answer to your first question is "no" the circuit clerk is not allowed to collect the fee in question.
Question 2 — [W]ould there be a violation of A.C.A. § 14-14-1202 ifthe Quorum Court adopts the ordinance and then Cycle Breakers, Inc.compensates or reimburses the county employees and provides the CountyJudge with a payment voucher which details the date, amount and purposeof the compensation or reimbursement so that the County Judge would beable to file an affidavit affirming that the compensation orreimbursement was in line with the ordinance?
In my opinion the process you have outlined is not entirely consistent with A.C.A. § 14-14-1202 and may also implicate and transgress the provisions of A.C.A § 21-8-801.
Section 14-14-1202 provides in pertinent part as follows:
 (a) PUBLIC TRUST. (1) The holding of public office or employment is a public trust created by the confidence which the *Page 7 
electorate reposes in the integrity of officers and employees of county government.
 (2) An officer or employee shall carry out all duties assigned by law for the benefit of the people of the county.
 (3) The officer or employee may not use his or her office, the influence created by his or her official position, or information gained by virtue of his or her position to advance his or her individual personal economic interest or that of an immediate member of his or her family or an associate, other than advancing strictly incidental benefits as may accrue to any of them from the enactment or administration of law affecting the public generally.
 * * * (c) RULES OF CONDUCT. (1) No officer or employee of county government shall:
 (A)(i) Be interested, either directly or indirectly, in any contract or transaction made, authorized, or entered into on behalf of the county or an entity created by the county, or accept or receive any property, money, or other valuable thing for his or her use or benefit on account of, connected with, or growing out of any contract or transaction of a county.
 (2)(A)(i) If the quorum court determines that it is in the best interest of the county, the quorum court may by ordinance permit the county to purchase goods or services directly or indirectly from quorum court members, county officers, or county employees due to unusual circumstances.
 (ii) The ordinance permitting the purchases must specifically define the unusual circumstances under which the purchases are allowed and the limitations of the authority.
 * * * *Page 8 (C) If goods or services are purchased under these procedures, the county judge must file an affidavit, together with a copy of the voucher and other documents supporting the disbursement, with the county clerk certifying that each disbursement has been made in accordance with the provisions of the ordinance.
(Emphasis added).
In my opinion the prohibition of A.C.A. § 14-14-1202(c)(A)(i) would ordinarily prohibit a county employee from being interested in the contract that apparently exists between the County and Cycle Breakers, Inc.[2] My predecessors have concluded and I agree, that an employee or subcontractor of an entity contracting with a county has at least an "indirect" interest in the contract for purposes of A.C.A. §14-14-1202(c)(A)(i). See, e.g., Ops. Att'y Gen. 2002-327, 2000-195; 2000-088 and 99-10. Assuming the existence of such a contract, A.C.A. § 14-14-1202(c)(A)(i) prohibits a county employee from being interested "either directly or indirectly" in the contract. Your question therefore focuses on the exception language of A.C.A. § 14-14-1202, found at subsection (c)(2)(A)(i). It allows a quorum court to pass an ordinance to permit the county to "purchase goods or services directly or indirectly from . . . county employees due to unusual circumstances." I assume, therefore, that any such ordinance would authorize the county to "indirectly" (through the contract with Cycle Breakers), purchase "services" from county employees. You have attached a draft ordinance in this regard.
The draft ordinance states as follows:
 Whereas the Quorum Court recognizes that in order to deal with crime Prevention and Intervention programs are essential; and
 Whereas the Pulaski County Circuit Court, Fifth Division has a probation department which is charged with the responsibility of providing serves [sic] that will help to rehabilitate criminal defendants thereby preventing future crimes; and *Page 9 
Whereas the Pulaski County Circuit Court, Fifth Division has worked with Cycle Breakers, Inc. in helping to sponsors [sic] programs that will help to rehabilitate criminal defendant [sic].
BE IT THEREFORE RESOLVED THAT:
 1. Employees of Pulaski County are authorized to receive compensation and reimbursement from Cycle Breakers, Inc. for their services as security, drivers, group leaders, and staff at the Quarterly Mandatory Meetings, Monthly Meetings, Daily Meetings, Chemical Free Program, Anger Management/Domestic Violence Classes and other activities related to the rehabilitation of criminal defendants.
 2. Employees of Pulaski County are further authorized to receive compensation and reimbursements from Cycle Breakers, Inc. for tuition, training, meetings, and other classes that they attended to further their qualifications, skills or education.
 3. Cycle Breakers, Inc. will provide the County Judge with a payment voucher that will document the date of the payment, the amount of the payment and the purpose of the payment. The County Judge will then file an affidavit with the Circuit Clerk verifying that the compensation and reimbursement meets the unusual circumstances as defined in this ordinance.
Section 14-14-1202(c)(2)(A)(i) does not, in my opinion, authorize a "blanket" ordinance sanctioning compensation to be paid to unspecified county employees by an entity which has a contract with the county, subject to later verification by the county judge. In my opinion, subsection (c)(2)(a)(i) empowers the quorum court to authorizecontracts or transactions between particular county employees and the county, or in this case, between county employees and the county's contractor (Cycle Breakers, Inc.) for the purchase of, in this case, "services" of the employees. The information you have presented does not appear to mention or reflect any type of contractual arrangement between the individual county employees and Cycle Breakers, Inc. The ordinance merely states in this regard that county employees are "authorized to receive compensation and reimbursement *Page 10 
from Cycle Breakers, Inc. . ." for the services listed in Section 1 above. I cannot determine whether the county employees will enter into separate employment or other contractual agreements with Cycle Breakers, Inc. for their services or what the exact arrangement will be between the county employees and Cycle Breakers, Inc. What is clear is that public employees may not simply receive compensation from a private county contractor for the performance of their public duties.
In this regard, the draft ordinance is unclear as to whether the county employees in question would be performing the services as a part of the duties of their public positions, or in a private capacity during their off-duty hours, through a separate employment arrangement or contract with Cycle Breakers, Inc. Again, A.C.A. § 14-14-1202 appears to contemplate only the latter situation. If the required "services" of these county employees are instead performed in the employees' capacity as public employees, this would call into question the applicability of another statute, A.C.A. § 21-8-801(a)(1) (Repl. 2004), which prohibits a public servant from receiving compensation, other than the income and benefits from the governmental body to which he is assigned, for the performance of the duties and responsibilities of his office or position. Thus, although a quorum court is authorized to permit certain transactions under A.C.A. § 14-14-1202(c)(2)(a)(i), it may not, in so doing, allow violation of another state statute, such as A.C.A. §21-8-801. This latter statute is under the jurisdiction of the Arkansas Ethics Commission. I suggest that any questions in this regard be submitted to that entity.
Additional questions may arise under Section 2 of the draft ordinance, which would authorize county employees to receive compensation and reimbursement for "tuition, training, meetings, and other classes that they attended to further their qualifications, skills or education." Section 14-14-1202(c)(2)(A)(i) empowers the quorum court to permit the county to "purchase goods or services" from county employees. In this case, the purchase of services would be "indirect" through the county's contractor. It is difficult to peg the furtherance of a county employee's qualifications, skills or education, however, as a "service" purchased by the county, or in this case by the contractor. There is thus some doubt as to whether A.C.A. § 14-14-1202(c)(2)(A)(i) authorizes an ordinance to sanction these particular types of expenditures. Seealso, Op. Att'y Gen. 2007-207 (discussing the legality of a city funding its employees' educational expenses).
Finally, the quorum court may make an exception to the A.C.A. §14-14-1202(c)(A)(i) prohibition only in the event of "unusual circumstances." The *Page 11 
ordinance must "specifically define the unusual circumstances" under which the purchases are allowed and the limitations of such authority. It is not clear from the facts presented, including the draft ordinance, what "unusual circumstances" justify the ordinance. The ordinance recites the important nature of prevention and intervention programs and notes that the Pulaski County Circuit Court, Fifth Division has a probation department and is charged with providing services to help rehabilitate criminal defendants. The draft ordinance also states that the Fifth Division "has worked with Cycle Breakers, Inc. in helping to sponsors [sic] programs. . . ." The draft ordinance does not state, however, what "unusual circumstances" make it necessary to engage the services of county employees in this regard, or why non-countypersonnel could not be used to provide the required services to Cycle Breakers, Inc. The ordinance must "specifically define the unusual circumstances under which the purchases are allowed. . . ." Seealso, Op. Att'y Gen. 99-010. There is thus some question as to whether the draft ordinance meets the requirements of the statute in this regard. In my opinion, therefore, the process you have outlined is not entirely consistent with A.C.A. § 14-14-1202 and may also implicate and transgress the provisions of A.C.A § 21-8-801.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The question has apparently not been addressed by more particular legislation because, according to my understanding, only two circuit courts in the state directly utilize private providers of such community-based programs. Most circuit courts in the state utilize the Department of Community Correction for probation and supervisory functions related to offenders, including presumably the "community correction provider service programs" provided through that agency.See Investigative Report, Legislative Joint Auditing Committee "Review of Selected Activity, Cycle Breakers Inc." (August 1, 2007), available at www.legaudit.state.ar.us, and A.C.A. § 16-93-1202 (Supp. 2007).
[2] In this regard, I assume, because you have stated that "Cycle Breakers, Inc. receives funds from Pulaski County," that there is a contract between these two entities. Otherwise, constitutional problems arise. See again, Arkansas Constitution, art. 12 § 5; City ofJacksonville v. Venhaus, 302 Ark. 204, 788 S.W.2d 478 (1990); and Op. Att'y Gen. 2002-099. *Page 1