Don McSpadden, Prosecuting Attorney Sixteenth Judicial District 368 East Main Street Post Office Box 2051 Batesville, Arkansas 72503
Dear Mr. McSpadden:
I am writing in response to your request for my opinion on the following questions:
 1. Does a county have the authority to place a voluntary tax or voluntary contribution for the benefit of nonprofit corporations on the tax bills, collect the amounts and make distributions without a vote of the electors?
 2. If the answer to question 1 is "yes," what is the proper procedure for the county to follow in placing the voluntary tax or voluntary contribution on the tax bills?
 3. If the answer to question 1 is "no," is it proper for a county to issue a separate bill listing suggested voluntary taxes or contributions for the benefit of nonprofit corporations?
 4. Does it make any difference if the nonprofit performs a required county or municipal function, a permissible function, or a function that is outside the scope of the political subdivision?
 5. If a county can have a voluntary tax or "contribution" for the benefit of a nonprofit corporation on the tax bill, does the *Page 2 
quorum court have the authority pick and choose which nonprofit organizations should be placed on the tax bills?
 6. Does it matter if there is a cost to the county in collecting the voluntary contributions or taxes?
 7. Does it matter if the county officials deduct their cost of collection, or a commission, before distributions to the nonprofit?
 8. If a cost, commission, or fee may be charged for the collection of voluntary taxes or contributions, what is the proper amount that may be charged?
 9. Would your opinion be different if the contributions were for volunteer fire departments or fire protection districts?
RESPONSE
As regards your first eight questions, I concur in all respects with my predecessor's conclusions in Op. Att'y Gen. No. 96-069, which addressed the same questions. With respect to your ninth question, in my opinion, it would be impermissible under Ark. Const. art. 12, § 5, for a county to collect "a voluntary tax or voluntary contribution" — i.e., a donation — on behalf of a volunteer fire department organized as a private nonprofit corporation. By contrast, if the fire department were organized as a fire protection district, a reviewing court might well conclude that this constitutional proscription did not apply to foreclose the county from providing the collection service.
Questions 1 through 8:
These questions track verbatim eight questions addressed by one of my predecessors in the attached Op. Att'y Gen. No. 96-069. The pertinent law has not changed since my predecessor issued his opinion, with which I concur in all material respects. I suggest that you further consult the attached Ops. Att'y Gen. Nos. 2005-205 and 1999-408, which discuss in detail the scope of the constitutional proscription against a local unit of government's contributing to the affairs of a private nonprofit corporation. *Page 3 
Question 9: Would your opinion be different if the contributionswere for volunteer fire departments or fire protection districts?
In my opinion, it would be impermissible for a county to collect a donation — or, as you term it in your first question, "a voluntary tax or voluntary contribution" — on behalf of a volunteer fire department organized as a nonprofit corporation. However, although no reviewing court has directly addressed the issue, I believe it would be constitutionally permissible for the county to make such collections on behalf of a fire department organized under the Arkansas Code as a fire protection district.
Although your question might be read as assuming that the terms "volunteer fire departments" and "fire protection districts" are interchangeable, I do not believe this assumption is warranted if the volunteer department is organized as a nonprofit corporation. In certain contexts, this office has in the past indeed tended to conflate the two terms. For instance, in addressing whether a firefighter could simultaneously serve as an alderman, one of my predecessors offered the following:
 In order for the above quoted provision[1] to be applicable, the department in question must be a volunteer fire department. One of my predecessors outlined the various sources of statutory authority for the formation of "volunteer fire departments," as follows:
 Under Arkansas law, what is referred to as a "volunteer fire department" may take one of any number of legal forms. Such departments may be incorporated as purely private nonprofit corporations collecting dues or membership fees; as fire protection districts
under A.C.A. § 14-284-101 et seq. or 14-284-201 et seq., or suburban fire improvement districts under A.C.A. § 14-92-201 et seq., all of which assess local benefits to be collected with ad valorem taxes; as a county "volunteer fire department" under A.C.A. § 14-20-108(c) or as a county created subordinate service district under A.C.A. §§ 14-14-708 and-709 (1987). In addition, *Page 4 
although the statutes authorizing the creation of municipal fire departments do not refer to such departments as "volunteer" departments (see A.C.A. 14-53-101), some municipalities routinely characterize their departments as such.
 Op. Att'y Gen. No. 96-114, n. 2.[2]
[Emphases added.]
I have since echoed this formulation in addressing the availability of certain state funding to a private nonprofit fire department that accepted dues payments from individuals outside district boundaries.[3] In distinguishing "fire protection districts," I quoted with approval the following summary offered by my predecessor:
 The term "fire protection district," in a legal sense, ordinarily refers to a type of improvement district created under A.C.A. § 14-284-101 et seq., or 14-284-201 et seq. These two subchapters are entitled "Fire Protection Districts" and "Fire Protection Districts Outside of Cities and Towns," respectively. The boundaries of such entities are fixed in the petition to form the district. See A.C.A. §§ 14-284-103(a) and 14-284-206. These districts collect amounts which are either assessed as benefits against property within the district, or levied as flat fees on property within the district, both of which are collected with property taxes. See
A.C.A. § 14-284-108; § 14-284-212; § 14-284-212(g); § 14-284-112; §§ 14-284-215 — 216.[4]
I further adopted my predecessor's distinction between such districts and "private nonprofit `subscription' fire departments," which my predecessor described as follows:
 The nonprofit entities to which you refer are variously referred to as `nonprofit fire protection corporations' (see, e.g., Acts 1991, No. 801 § 5), *Page 5 
or simply as `volunteer fire departments' or `rural fire departments.' They are simply created under the general state law authorizing the creation of all types of nonprofit corporations.[5]
However, the question of what might constitute a "volunteer fire department" for purposes of triggering a statute dealing with dual service does not bear on the distinct constitutional provision that forbids a county to "obtain . . . money for . . . any corporation, association, institution or individual."[6] At issue here is whether that provision might foreclose a county from using its resources to "obtain" voluntary payments on behalf of an organization structured as a private nonprofit corporation.
As reflected in the attached Opinions2005-205 and 1999-408, case law as evolved over the years strongly suggests that an organization's formation as a private nonprofit corporation will in itself foreclose that entity's receiving direct or indirect support from a political subdivision. Indeed, as early as 55 years ago, the Arkansas Supreme Court, relying on Article 12, § 5 of the constitution, bluntly refused to condone a local government's purchase of a "membership" in an industrial development corporation organized as a private nonprofit corporation:
 Under Section 20 of the Act 404, a city, town or county is allowed to "purchase membership" in a local industrial development corporation. It would be doing indirectly what the Constitution forbids to be done directly, if a county or municipality were allowed to purchase a membership in the corporation, because such purchase of "membership" would certainly be granting financial aid to the said local corporation. When the Arkansas Legislature allowed the creation of local development corporations as private non-profit corporations, it could not at the same time allow counties or municipalities to grant financial aid to such corporations.[7] *Page 6 
(Emphasis added.) As this passage suggests, at least as concernsdirect financial aid, it appears that a political subdivision such as a county cannot contribute to a private nonprofit corporation regardless of whether the corporation serves a "public purpose."[8]
Specifically with respect to a county's proposed contributions to a rural fire department, one of my predecessors relied upon such pronouncements in offering the following analysis: "If the rural fire department in question is a private non-profit corporation, a donation by the county would be constitutionally suspect. If the rural fire department in question is not a private non-profit corporation, however, the answer to your question will depend upon the public status of the department."[9]
Although I appreciate that there may be a difference between a county's making a direct financial contribution to a private nonprofit organization and its providing an indirect contribution in the form of collection services rendered, I doubt the constitutional force of this distinction, particularly if the service rendered is for collection of a private donation to a private entity.[10] As discussed at length in the opinions attached hereto — analyses I will not here repeat in detail — Article 12, § 5 has been judicially interpreted to foreclose any local government contributions — presumably including a contribution of collection services — to a private nonprofit corporation.
In the attached Opinion 98-069, my predecessor addressed this issue directly, offering the following analysis in response to the question of whether the Article 12, § 5 proscription might not apply if a county incurred no direct costs in collecting "voluntary taxes" or "voluntary contributions" on behalf of a private corporation: *Page 7 
 The language of the provision itself [Article 12, § 5] goes primarily to the transfer of public funds to private entities. It is only the included language proscribing the "obtain[ing]" of money for such private corporations, which, in my opinion prohibits the collection of voluntary taxes for such entities. I cannot, however, give no effect to this language. It prohibits a county from "obtain[ing]" money for a private corporation. The expenditure of county funds in the obtaining of such money does not appear to be a requirement in order for the above prohibition to apply. Although there is no judicial precedent on the question, therefore, I am constrained to opine that the answer to this question is "no."
As this excerpt suggests, the constitutional proscription against a county's "obtaining" funds on behalf of a private nonprofit corporation remains categorical, foreclosing even such a conditioned governmental in-kind contribution.
Although my predecessor did not directly say so, I believe the constitutional objection to providing services of the sort at issue would be particularly forceful because the county would be devoting its resources to the collection of private donations, as distinct from dues, on behalf of a private nonprofit corporation. Without addressing how a court might adjudge the propriety of a county's collecting, on behalf of a private nonprofit corporation, voter-approved dues to support an apparently public service[11] — a question you have not posed — I will simply opine that it is impermissible to devote such governmental services to the collection of voluntary donations to a private nonprofit corporation.
A court's constitutional review might well yield a different result if what you term "a voluntary tax or voluntary contribution" were directed to a "fire protection district" formed under the Code.[12] As the Arkansas Court of Appeals has bluntly acknowledged, a fire protection district is "a plainly public entity," whose existence is not based upon "private enrollment or membership."[13] In my opinion, *Page 8 
a reviewing court might well rely on this fact to conclude that the Article 12, § 5 proscription does not apply to a county's donation of money or services to a fire protection district.
As discussed at length in the attached Opinions2005-205 and 1999-408, there exists a category of statutorily authorized entities that resist ready categorization as arms of a political subdivision but that appear to fall outside the scope of the proscription set forth in Article 12, § 5. The focus in locating such organizations in terms of the constitutional proscription is on whether they qualify as "public" institutions. Based upon his review of the applicable case law, in Opinion 1999-408, my predecessor summarized the general principles involved as follows:
 [A]ny use of county moneys for charitable purposes may well pass constitutional muster if the use serves a public purpose or achieves a governmental function, so long as the recipient can be characterized as "public". . . . As the law currently stands, there appears to be some element of fiat in the Supreme Court's pronouncements regarding what pledges of municipal or county funds will be permitted. As established in McCutchen, [14] it is clearly permissible, for instance, to contribute to a facilities board, which, despite not being a straightforward municipal agency, has a statutory pedigree and has been identified as a category of entity beyond the contemplation of article 12, § 5. In the wake of Venhaus, [15] however, it is clearly impermissible to contribute to a private nonprofit corporation like the AIDC. Perhaps the most that can be said is that if an entity is authorized by statute and is not organized as a private nonprofit corporation, and especially if the donations themselves are authorized by statute, a donation of county or municipal funds may be constitutional. *Page 9 
In my opinion, as the court acknowledged in Waterworks, [16] a fire protection district is clearly "public" in the sense contemplated in McCutchen. The formation of such a district is contemplated by statute and the formalities of its public organization and functioning are detailed in the subchapters of the Code authorizing the establishment of fire protection districts.[17] To be sure, as a practical matter, the operations of a private nonprofit fire department and a fire protection district may significantly overlap.[18] It remains the case, however, that the courts have chosen to distinguish private nonprofit corporations as subject to the proscription against local contributions set forth in Article 12, § 5, regardless of whether such corporations might be characterized as serving a "public purpose" of the sort served by public or quasi-public organizations.[19]
The opinion just stated draws strong support from the discussion by one of my predecessor of whether a county might provide financial support to various rural *Page 10 
fire districts established in Johnson County.[20] In addressing whether Article 12, § 5 foreclosed any such contributions, my predecessor considered what he termed "challenges to the appropriation of county and city funds to other improvement districts."[21] In concluding that such support of fire districts would not offend the constitution, my predecessor focused in particular upon the Arkansas Supreme Court's approval of a city's appropriation to support an improvement district created to construct and maintain a system of waterworks and electric lights.[22] My predecessor stressed that the court had based its approval upon the construction's having been undertaken not only in pursuit of a "public purpose," but further by "a public agency and not by a private corporation or association of individuals."[23] He further observed that the court had drawn a similar conclusion regarding a municipal appropriation to a street improvement district.[24] Based upon these precedents, he concluded:
 It may be successfully contended, following the rationale set forth in these cases, that a fire protection district is engaged in a public purpose, as evidenced by the county's specific authority to make provision for fire prevention and protection services. See
A.C.A. 14-14-802(b)(2)(D)(iii). These cases may also be relied upon for the proposition that the district, similar to a waterworks or street improvement district, is not a "company, association or corporation" within the meaning of Art. 12, 5. It is therefore my opinion that judicial precedent suggests the appropriateness of an expenditure of county funds on behalf of fire protection districts, although the funds *Page 11 
should probably be appropriated on a county-wide basis in the absence of circumstances justifying a different distribution.
In my opinion, this conclusion applies a fortiori when a county contribution to a fire protection district consists merely in providing the administrative mechanism to collect voluntary private donations, as distinct from a direct financial contribution by the county itself.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM/JHD:cyh
Enclosures
[1] The referenced provision, currently codified at A.C.A. § 14-42-115 (Supp. 2011), authorizes a volunteer firefighter to serve on a city council.
[2] Op. Att'y Gen. No. 2004-070. Accord Ops. Att'y Gen. Nos. 2008-134, 2004-294, 2004-069, 2001-351, 99-346, 98-148 and 97-208 (all acknowledging these various types of "volunteer fire departments").
[3] Op. Att'y Gen. No. 2008-073.
[4] Op. 2008-073, quoting Opinion 98-148.
[5] Id.
[6] Ark. Const. art. 12, § 5, whose application I consider as determinative in this instance, provides in its entirety: "No county, city, town or other municipal corporation, shall become a stockholder in any company, association, or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual."
[7] Halbert v. Helena-West Helena Industrial Development Corp.,226 Ark. 620, 625, 291 S.W.2d 802 (1956).
[8] See Ark. Op. Att'y Gen. No. 90-279 (reading the passage just quoted as supporting this conclusion).
[9] Op. Att'y Gen. No. 94-147.
[10] I am aware that the Code authorizes a county to collectcompulsory dues owed a nonprofit voluntary fire department following voter approval. You have not asked, and I will not here address, whether this presumptively constitutional legislation might be subject to challenge under Article 12, § 5. I will note, however, that this office has on various occasions acknowledged the existence of this statute and its facial application to private nonprofit fire departments. See Ops. Att'y Gen. Nos. 2008-073, 2007-031, 2004-257, 2004-224, 2002-032 and 96-114.
[11] See A.C.A. § 14-20-108(a)(1)(B)(i)(c) (authorizing such collection contingent upon voter approval but foreclosing the county from pursuing delinquencies).
[12] The terms and formalities of establishing such districts are set forth at A.C.A. §§ 14-284-101 et seq. or 14-284-201 et seq.
(Repl. 1998 Supp. 2011).
[13] Waterworks and Sewer Public Facilities Board v. KristenInvestment Properties, 72 Ark. App. 37, 42, 32 S.W.3d 60 (2000).
[14] McCutchen v. Huckabee,328 Ark. 202, 213, 943 S.W.2d 225 (1997) (approving a county's contribution to a multipurpose civic center located in Pulaski County).
[15] City of Jacksonville v. Venhaus,302 Ark. 204, 211, 788 S.W.2d 478 (1990) (striking, under Article 12, § 5, a chancellor's $700,000 distribution of residual common-fund proceeds to charity, including $350,000 to private nonprofit corporations).
[16] See fn. 11, supra.
[17] See fn. 12, supra.
[18] This overlap is reflected in A.C.A. § 14-272-301 (Supp. 2011), which, for purposes of authorizing fire department service agreements, defines the term "fire department" as meaning "any fire protection district, improvement district, subordinate service district, other governmental entity orvolunteer, not-for-profit, rural, or other organization, or entity of any nature that is involved in the provision of firefighting services." (Emphases added.)
[19] See discussions in the attached Opinions2005-205 and 1999-408. In Op. Att'y Gen. No. 2004-294 (opining that it would be impermissible for a private nonprofit fire department to devote public funding to a campaign contribution), my predecessor recognized that, regardless of how it is organized, a fire department provides a public service that warrants its receipt of certain state-authorized funding. (My predecessor made this observation in the course of However, a private organization's limited access to public funds does not establish that organization as "public" in the sense of being located outside the scope of Article 12, § 5, which precludes local governmental units from contributing to private nonprofit corporations. In my opinion, this constitutional proscription must be read as qualifying the scope of a statute like A.C.A. § 14-284-408(b) (Repl. 1998), which directs that the state's supplementing of fire-protection funding from the Fire Protection Premium Tax Fund shall not be deemed to prevent a county from "from contributing funds directly to any volunteer fire department or district" serving the county. I believe this statute does no more than acknowledge a county's authority to fund county services. Despite the occasional breadth of the term "volunteer fire department" as used in other contexts, see discussion in text,supra, I believe the strictures of Article 12, § 5 mandate reading the term as used in this statute narrowly, foreclosing a county from "obtaining" money on behalf of a private nonprofit corporation.
[20] Op. Att'y Gen. No. 88-114. The subchapter of the Code currently devoted to the provision of rural fire protection defines the term "rural fire protection district" as "includ[ing] any city or town which does not have a full-time organized fire department or in which seventy-five percent (75%) or more of the fire fighters employed by the fire department are volunteer fire fighters." A.C.A. § 14-284-301(Repl. 1998).
[21] Id.
[22] Bank of Commerce v. Huddleston,172 Ark. 999, 291 S.W. 422 (1927).
[23] Opinion 88-114, quoting Huddleston, supra at 1006.
[24] Id., citing City of Paris v. Street Imp. Dist. No. 2,206 Ark. 926, 175 S.W.2d 199 (1943). My predecessor's inclination to analogize from Article 12, § 5 as applied to improvement districts seems particularly appropriate in light of the fact that A.C.A. § 14-92-237(d)(1) (Supp. 2011) expressly authorizes the conversion of an improvement district created to provide fire protection services into a fire protection district subject to A.C.A. § 14-284-201 et seq. *Page 1